**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| WORLDS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:12-CV-10576 (DJC) |
| | ) |
| ACTIVISION BLIZZARD, INC., | ) |
| BLIZZARD ENTERTAINMENT, INC. and | ) |
| ACTIVISION PUBLISHING, INC., | ) |
| | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ......................................... 4

    A.   The Patents-In-Suit ............................................................. 5

    B.   Worlds' Admitted Prior Public Use Of The Claimed Inventions ........................... 6

        1.   *AlphaWorld* ............................................................. 6

        2.   *Worlds Chat* ............................................................ 8

        3.   Worlds' Previous Admissions Concerning *Worlds Chat* ........................... 10

III. ARGUMENT ................................................................................. 10

    A.   The Relevant Law ............................................................. 10

        1.   The Law Of Summary Judgment ........................................... 10

        2.   The "Specific Reference" Required By 35 U.S.C. §§ 119 & 120 And C.F.R. § 1.78 Must Be Set Forth In The First Sentence Of The Specification ............... 11

        3.   Later-Filed Applications In A Chain Cannot Cure A Defective Priority Claim In An Intermediate Application In The Chain ................. 16

        4.   Invalidity Based On Prior Public Use ....................................... 16

    B.   The Effective Filing Date Of The Patents-In-Suit Is November 12, 1996 ............ 17

        1.   The '690 And '045 Patents Are Not Entitled To The Benefit Of The Filing Date Of The Provisional Application ............... 17

        2.   The '558, '856, '501, And '998 Patents Likewise Are Not Entitled To The Priority Date Of The Provisional Application ............ 19

    C.   The Patents-In-Suit Are Invalid Because Of Worlds' Prior Public Use Of The Claimed Inventions ......................... 19

IV.  CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adenta GmbH v. OrthoArm, Inc.*,
   501 F.3d 1364 (Fed. Cir. 2007)............................................................................17

*Am. Seating Co. v. USSC Grp., Inc.*,
   514 F.3d 1262 (Fed. Cir. 2008)............................................................................17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................................11

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
   731 F.2d 831 (Fed. Cir. 1984)..............................................................................11

*Bradford Co. v. Conteyor N. Am., Inc.*,
   603 F.3d 1262 (Fed. Cir. 2010)............................................................................11

*Broadcast Innovation, LLC v. Charter Commc'n Inc.*,
   Case No. 1:03-CV-02223, 2004 WL 4910037 (D. Col. Aug. 4, 2004),
   *rev'd on other grounds*, 420 F.3d 1364 (Fed. Cir. 2005)........................................15

*Broadcast Innovation, LLC v. Charter Commc'n, Inc.*,
   420 F.3d 1364 (Fed. Cir. 2005).......................................................................15, 18

*Cordis Corp. v. Boston Scientific Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009)............................................................................11

*E.I. DuPont de Nemours & Co. v. MacDermid Printing Solutions, LLC*,
   525 F.3d 1353 (Fed. Cir. 2008).......................................................................14, 15

*Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*,
   643 F. Supp. 2d 874 (W.D. Tex. Aug. 3, 2009),
   *aff'd*, 609 F.3d 1345 (Fed. Cir. 2010) .......................................................... passim

*Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*,
   609 F.3d 1345 (Fed. Cir. 2010)..................................................................... passim

*Hovlid v. Asari*,
   305 F.2d 747 (9th Cir. 1962) .........................................................................14, 18

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005)............................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).............................................................................................11

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed. Cir. 1995) ............................................................................... 13

*Myspace, Inc. v. Graphon Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012) .............................................................................. 11

*Netscape Commc'n Corp. v. Konrad*,
    295 F.3d 1315 (Fed. Cir. 2002) .............................................................................. 17

*Pongrac v. Consol. Rail Corp.*,
    632 F. Supp. 126 (E.D. Pa. 1985) ..................................................................... 10, 20

*Sampson v. Ampex Corp.*,
    463 F.2d 1042 (2d Cir. 1972) ......................................................................... 14, 15, 18

*Simmons, Inc. v. Bombardier, Inc.*,
    328 F. Supp. 2d 1188 (D. Utah 2001) ............................................................ 14, 15, 18

*Sticker Indus. Supply Corp. v. Blaw-Knox Co.*,
    405 F.2d 90 (7th Cir. 1968) ............................................................................... 14, 18

*Tokai Corp. v. Easton Entm't, Inc.*,
    632 F.3d 1358 (Fed. Cir. 2011) .............................................................................. 11

*Zenith Elecs. Corp. v. PDI Commc'n. Sys., Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008) .............................................................................. 16


**STATUTES**

35 U.S.C. § 6 ............................................................................................................. 12

35 U.S.C. § 102 .................................................................................................. passim

35 U.S.C. § 119 .................................................................................................. passim

35 U.S.C. § 120 .................................................................................................. passim


**OTHER AUTHORITIES**

37 C.F.R. § 1.78 ................................................................................................. passim

Fed. R. Civ. P. 56 ...................................................................................................... 10

MPEP § 201.11 ......................................................................................................... 13

## I.      INTRODUCTION

Defendants Activision Blizzard, Inc., Blizzard Entertainment, Inc., and Activision Publishing, Inc. (collectively "Activision") submit this Memorandum in support of their case dispositive motion for summary judgment that all of the asserted claims of the Patents-In-Suit are invalid.   Summary judgment is appropriate because there are no questions of material fact concerning the invalidity of the Patents-In-Suit, and Activision should be spared the considerable expense of defending itself against patents that are invalid as a matter of law.

Plaintiff Worlds, Inc. ("Worlds") is a patent holding company whose business is the licensing and enforcement of its patents.   Worlds' business address is the home of its CEO, Thomas Kidrin.   Worlds' claims of infringement are directed against Activision's *Call of Duty* and *World of Warcraft* video game products, which are two of the most commercially successful video games in history.

Worlds alleges that Activision infringes five patents – U.S. Patent Nos. 7,181,690; 7,493,558; 7,945,856; 8,082,501; and 8,145,998.[1]   The Patents-In-Suit describe a specific way to limit the amount of information sent to users of a networked virtual environment by sending each user information for a limited number of the other users.   This memorandum demonstrates that all of the asserted patent claims are invalid as a matter of law based on Worlds' own undisputed prior public use of the inventions.

Under 35 U.S.C. § 102(b), a patent is invalid if the patented invention was in public use more than one year before the effective filing date for the patent.   Summary judgment of invalidity is mandated here for two reasons: First, as a matter of law, the earliest effective filing date to which the Patents-In-Suit are entitled is ***November 12, 1996***.   Second, Worlds has

---

[1]       Individually "the '690 patent," "the '558 patent," "the '856 patent," "the '501 patent," and "the '998 patent," and collectively "the Patents-In-Suit."

admitted in verified interrogatory responses that the inventions of the asserted patent claims were in public use by Worlds at least as early as ***September 1995***, which is more than one year prior to the effective filing date of the Patents-In-Suit.  In view of Worlds' admissions, there are no questions of material fact concerning this public use.

Worlds asserts in this case that the Patents-In-Suit are entitled to an effective filing date of November 13, 1995, which is the filing date of U.S. Provisional Patent Application No. 60/020,296 ("the Provisional Application").  This assertion is incorrect as a matter of law because Worlds failed to comply with the established requirements to receive the benefit of that filing date.  Under the applicable statutes, regulations, and case law, the Patents-In-Suit are not entitled to benefit from the November 1995 filing date of the Provisional Application because the '690 patent does not contain a "***specific reference***" to the Provisional Application in the first sentence of the specification.  In fact, the '690 patent does not refer to the Provisional Application at all.  Instead, the '690 patent states that it is a "continuation [of] Ser. No. 08/747,420, filed ***Nov. 12, 1996***, now U.S. Pat. No. 6,219,045."  Hong Ex. 1 at col. 1:4-6 (emphasis added).[2]  The '045 patent is the parent of the '690 patent, but Worlds has not asserted the '045 patent in this lawsuit.  Like the '690 patent, the '045 patent also does not refer to the Provisional Application.  As explained below in detail, these omissions are fatal to Worlds' attempt to benefit from the November 13, 1995 filing date of the Provisional Application.

The applicable statute and Patent Office regulations in effect at the time the applications for the '690 and '045 patents were filed specified how a patent applicant like Worlds may claim the benefit of the filing date of an earlier-filed provisional application.  To make such a priority claim, the statute and rules mandated that Worlds' patent application contain a specific reference

---

[2]      "Hong Ex. __" hereinafter refers to Exhibit __ to the Declaration of Kathryn N. Hong in Support of Defendants' Motion for Summary Judgment of Invalidity.

to the earlier provisional application "*in the first sentence of the specification* following the title." 37 C.F.R. § 1.78 (1996) (emphasis added); *see also* 35 U.S.C. §§ 119(e)(1) & 120 (1994). This requirement serves the important public policy of providing the public with notice of a patent's effective filing date without imposing on the public the burden of poring over the file histories of the patent and any related patents, which might contain conflicting information.

Because Worlds' '690 and '045 patents do not refer to the Provisional Application at all, they may not claim the benefit of the November 13, 1995 Provisional Application filing date. Therefore, the effective filing date for the '690 and '045 patents is *November 12, 1996*, which is the date on which the application for the '045 patent was filed.

The asserted '558, '856, '501, and '998 patents all issued after the asserted '690 patent (and the unasserted '045 patent) issued.  These later patents purport to be "continuations" of the earlier '690 and '045 patents.  For the later '558, '856, '501, and '998 patents, Worlds amended the first sentence of their specifications to refer to the Provisional Application.  Nevertheless, the '558, '856, '501, and '998 patents are not entitled to claim the benefit of the 1995 filing date of the Provisional Application because the law dictates that, for a later-filed application to receive the benefit of the filing date of an earlier application, *each application in the chain of priority must properly reference the prior applications*.  *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1352 (Fed. Cir. 2010).

Once there is a break in the chain, references to an earlier filing date in later-filed applications are not effective.  Here, the '558, '856, '501 and '998 patents are all part of the same chain as the earlier '045 and '690 patents.  Although the '558, '856, '501, and '998 patents refer to and purport to claim priority to the Provisional Application, they cannot receive the benefit of the Provisional Application filing date because the earlier '690 and '045 patents do not claim

3

priority to the Provisional Application.  Accordingly, as a matter of law, the priority date for all of the Patents-In-Suit is November 12, 1996.

Worlds has admitted that, prior to November 1995, its *AlphaWorld* and *Worlds Chat* products were in public use and practiced the claimed inventions.  Because these systems were in public use more than one year before the priority date of the Patents-In-Suit, the Patents-In-Suit are invalid.

For the reasons discussed herein, Activision respectfully requests two determinations by the Court: (1) that the effective filing date of the '690, '558, '856, '501, and '998 patents is November 12, 1996; and (2) that all of the asserted claims of the Patents-In-Suit are invalid under 35 U.S.C. § 102(b), based on Worlds' admitted public use of the claimed inventions more than one year prior to the effective filing date of the Patents-In-Suit.

## II.      STATEMENT OF RELEVANT FACTS

On March 30, 2012, Worlds filed this action against Activision for alleged infringement of the '690, '558, '856, and '501 patents.  D.I. 1 at 4-10.  On September 21, 2012, Worlds amended its Complaint to add a claim of infringement of the '998 patent, which issued on March 27, 2012.  D.I. 32 at 10-11.  Worlds has asserted that Activision infringes '690 patent claims 1-20; '558 patent claims 4-9; '856 patent claim 1, '501 patent claims 1-8, 10, 12, 14-16; and '998 patent claims 1-3, 7, 8, 11-20.  D.I. 77 at 3-4.[3]  Worlds also contends that the Patents-In-Suit are entitled to an effective filing date of November 13, 1995, which is the filing date of Provisional Application No. 60/020,296.  D.I. 62 at 4.

This lawsuit is in discovery, with a *Markman* hearing scheduled for August 22-23, 2013. D.I. 81.

---

[3]      Worlds' originally also asserted infringement of '558 patent claims 1-3 and '998 patent claim 21.  D.I. 34 at 3-4.  However, Worlds has since dropped those claims from this lawsuit.  D.I. 77 at 3-4.

### A.    The Patents-In-Suit

The Patents-In-Suit are directed to a client-server network that enables a large number of users to interact in a virtual world displayed on a computer screen. Users interact in the virtual world through an "avatar," which is a graphical representation of the user in the virtual world. Figure 1 of the patents shows a drawing of two penguin avatars in the virtual chat environment.



The Patents-In-Suit and the unasserted '045 patent belong to the same patent family.  The figure below shows the relevant filing and issue dates of these patents:



The specifications of the unasserted '045 patent and the asserted '690, '558, '856, '501, and '998 patents are substantively identical, with one significant exception.  The '045 and '690 patents (in red highlight above) do not mention the Provisional Application.  The '045 patent does not claim priority to any earlier filed application.  Hong Ex. 2.  The '690 patent states in the first sentence of its specification only that it is a "continuation [of] Ser. No. 08/747,420, filed *Nov. 12, 1996*, now Pat. No. 6,219,045."  Hong Ex. 1 at col. 1:4-6 (emphasis added).

In contrast, the first sentence of the specification of each of the later-filed '558, '856, '501, and '998 patents (in blue highlight above) states that it "claims priority from [U.S.] [P]rovisional [Patent] [A]pplication [Ser.] No. 60/020,296, filed Nov. 13, 1995."  Hong Ex. 3 at col. 1:7-9; Ex. 4 at col. 1:14-16; Ex. 5 at col. 1:18-19; and Ex. 6 at col. 1:16-18.

### B.   Worlds' Admitted Prior Public Use Of The Claimed Inventions

Activision's Interrogatory Nos. 1-3 requested information about the development of the inventions of the Patents-In-Suit and about Worlds' products that embody the asserted patent claims.  For purposes of this motion, Activision does not dispute Worlds' admissions made in response to these interrogatories concerning *AlphaWorld* and *Worlds Chat*, described below.[4]

#### 1.   *AlphaWorld*

Worlds has admitted in its interrogatory responses that its software product called *AlphaWorld* was in public use and embodied all of the asserted claims of the Patents-In-Suit more than one year prior to their November 1996 effective filing date.  *AlphaWorld* was an

---

[4]     Activision served Interrogatory Nos. 1-3 on August 17, 2012.  Hong Ex. 7.  On September 19, 2012, Worlds served its first responses to those interrogatories.  Hong Ex. 8.  Worlds' first responses were deficient in significant respects.  Therefore, on December 7, 2012, Activision asked Worlds to supplement those interrogatory responses.  Hong Ex. 9.  On December 12, after hearing no response from Worlds, Activision again followed up with Worlds regarding the requested supplementation.  On December 13, the parties had a telephonic meet and confer regarding the issue, and Worlds agreed to supplement its responses to Interrogatories Nos. 1-3 by January 17, 2013.  Hong Ex. 10.  Worlds later asked for a further extension of time to respond to these interrogatories, and, by agreement, Worlds finally provided its verified responses on January 24.  Hong Ex. 14.  Four months later, on May 29, 2013, Worlds supplemented its responses to Interrogatory Nos. 1 and 2 by citing to supporting documents but did not substantively change the narrative portion of its response.  Hong Ex. 11.

online virtual environment in which users were represented by avatars. Users could move through the virtual environment, chat with other users and build structures. Hong Ex. 12. The following screen capture of *AlphaWorld* from September 1995 is available at www.digibarn.com/collections/software/aw/early-aw-wc/. Hong Ex. 13.



Worlds' verified interrogatory responses make the following admissions concerning *AlphaWorld*:

- "On approximately June 29, 1995, Worlds released *AlphaWorld*." Hong Ex. 14 at 6.
- "… *AlphaWorld* was first demonstrated in June 1995. As of at least September 1995, *AlphaWorld* practiced all asserted claims." *Id.* at 10.
- "Simultaneously, Worlds developed the Active Worlds platform, upon which *AlphaWorld* (demonstrated initially in June 1995) was based. At least as of September 1995, *AlphaWorld* practiced all asserted claims. Subsequent versions of *AlphaWorld* also practiced the asserted claims." *Id.* at 11.

Worlds' admissions concerning the prior public use of *AlphaWorld* are consistent with publicly-available information. For example, an October 4, 1995 article from the Los Angeles Times indicates that *AlphaWorld* was available for download from Worlds' website and that *AlphaWorld* had "[s]ome 4,000 Internet users." Hong Ex. 12 at D4. That article also referred to an online newspaper that covered *AlphaWorld*. *Id.* Copies of the *AlphaWorld* newspaper –

called the "New World Times" – are still available at the Internet Archive website and show that *AlphaWorld* was in public use prior to November 1995.  Hong Ex. 15.  Furthermore, an archived page from another Internet website called "The CWSApps List" confirms that multiple updated releases of *AlphaWorld* were made available for download throughout October 1995.  Stroud Aff. ¶¶ 5, 7-8, Ex. A (chronicling the release of *AlphaWorld* versions 34-38 during the month of October 1995).

In response to Activision's Interrogatory No. 3, Worlds provided claim charts explaining how *AlphaWorld* embodied every limitation of all of the asserted claims of the Patents-In-Suit as of September 1995.  Hong Ex. 14 at 13; Ex. 18.  Worlds based these charts on the September 1995 version of *AlphaWorld* that Worlds asserts is "representative of the platform."  Hong Ex. 14 at 13.  Thus, for purposes of this motion, it is undisputed that *AlphaWorld* embodied all of the asserted claims and was in public use at least as early as September 1995.

### 2. *Worlds Chat*

Worlds also has admitted that its software product called *Worlds Chat* was in public use and embodied all of the asserted claims of the Patents-In-Suit more than one year prior to their November 1996 effective filing date.  *Worlds Chat* was "a three-dimensional, multi-user chat environment" in which "users adopt animated characters that interact with other online participants in a graphically rich space-station setting."  Hong Ex. 16.  The following screen capture of *Worlds Chat* from September 1995 is available at www.digibarn.com/collections/software/aw/early-aw-wc/.  Hong Ex. 13.



Worlds' verified interrogatory responses make the following admissions concerning *Worlds Chat*:

- "After months of development and testing, in April 1995, KA Worlds released the *Worlds Chat* software . . ." Hong Ex. 14 at 6.
- "*Worlds Chat* was first demonstrated in April 1995 . . ." *Id.* at 10.
- "Upon information and belief, *Worlds Chat* practiced the claimed invention as of approximately April 1995." *Id.*

As with *AlphaWorld*, Worlds' admissions concerning the prior public use of *Worlds Chat* are consistent with publicly available information. For example, an April 24, 1995 article stated that *Worlds Chat* was released in April 1995. Hong Ex. 16. The article reported that "Worlds Inc. is giving away Worlds Chat software free at their Web site, at http://kaworlds.com." *Id.* An archived page from the Internet website "The CWSApps List" also confirms that *Worlds Chat* was publicly available for download in October 1995. Stroud Aff. ¶¶ 5, 7-8, Ex. A (chronicling the release of, e.g., *Worlds Chat* versions 7c, 8a and 8b during the month of October 1995).

Worlds' response to Interrogatory No. 3 provided claim charts explaining how *Worlds Chat* embodied every limitation of all of the asserted claims of the Patents-In-Suit. Worlds states that these claim charts are based on "the April 1996 version of *Worlds Chat*, which is

representative of the platform and which includes change logs referencing earlier *Worlds Chat* versions." Ex. 14 at 13; Ex. 19.  Thus, for purposes of this motion, it is undisputed that *Worlds Chat* embodied all of the asserted claims and was in public use at least as early as April 1995.

### 3.   Worlds' Previous Admissions Concerning *Worlds Chat*

Worlds' admissions concerning *Worlds Chat* described above are consistent with similar admissions that Worlds made in a prior lawsuit against another defendant video game company, NCsoft.  In the *NCsoft* lawsuit, Worlds asserted the '690 and '558 patents that are now asserted against Activision (the '856, '501, and '998 patents had not yet issued).  In response to NCsoft's interrogatories, Worlds admitted that *Worlds Chat* embodied all of the patent claims asserted in the *NCsoft* lawsuit more than one year prior to the November 1996 effective filing date:

> At least by July 11, 1995, Worlds had conceived and actually reduced to practice the subject matter of the following asserted claims:
>
> U.S. Patent No. 7,181,690 – 1-3, 5-7, 9-12, 14, 15 and 17-20
> U.S. Patent No. 7,493,558 – 1-4, 6 and 8-11
>
> Worlds reduced the subject matter of the foregoing claims to practice no later than July 11, 1995 in Worlds Chat, a commercially available product.

Hong Ex. 17 at 7.

## III.   ARGUMENT

### A.   The Relevant Law

### 1.   The Law Of Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party may demonstrate the absence of a material fact by citing to admissions and interrogatory responses.  Fed. R. Civ. P. 56(c); *Pongrac v. Consol. Rail Corp.*, 632 F. Supp. 126 (E.D. Pa. 1985).  "Summary judgment is as available in patent cases as in other

areas of litigation." *Tokai Corp. v. Easton Entm't., Inc.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011) (quotations omitted).

When the facts underlying an invalidity determination are not in dispute, the Court determines "whether summary judgment of invalidity is correct by applying the law to the undisputed facts." *Myspace, Inc. v. Graphon Corp.*, 672 F.3d 1250, 1257 (Fed. Cir. 2012) (quotations omitted).  The moving party must establish invalidity by clear and convincing evidence. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005).  Once a *prima facie* case of invalidity is shown, however, the nonmoving party must come forward with rebutting material evidence to avoid summary judgment.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the nonmoving party "must come forward with 'specific facts showing that there is a *genuine issue for trial*'").  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "Denials or conclusory statements are insufficient" and will not defeat the moving party's motion.  *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).

### 2. The "Specific Reference" Required By 35 U.S.C. §§ 119 & 120 And C.F.R. § 1.78 Must Be Set Forth In The First Sentence Of The Specification

"Determination of a priority date is purely a question of law if the facts underlying that determination are undisputed." *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010) (citation omitted).

A patent's effective filing date is usually the date on which the patent application is filed with the Patent Office, unless the patentee claims the benefit of an earlier-filed application.  *See Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331-32 (Fed. Cir. 2009).  35 U.S.C.

§§ 119 and 120 set forth certain circumstances where a patent application may be entitled to benefit from the filing date of an earlier provisional or non-provisional application, respectively.

For patent claims filed prior to November 29, 2000 (the relevant time period here), Section 119(e)(1) provides:

> ***An application for patent*** filed under section 111(a) or section 363 of this title for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in a provisional application filed under section 111(b) of this title, by an inventor or inventors named in the provisional application, ***shall have the same effect, as to such invention, as though filed on the date of the provisional application*** filed under section 111(b) of this title, ***if the application for patent*** filed under section 111(a) or section 363 of this title ***is filed not later than 12 months after the date on which the provisional application was filed and if it contains or is amended to contain a specific reference to the provisional application***.

and Section 120 provides:

> ***An application for patent*** for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, which is filed by an inventor or inventors named in the previously filed application ***shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application*** or on an application similarly entitled to the benefit of the filing date of the first application ***and if it contains or is amended to contain a specific reference to the earlier filed application***.

35 U.S.C. §§ 119(e) & 120 (1994) (emphasis added).[5]

Under 35 U.S.C. § 6 (1994), the Commissioner of Patents has the authority to "establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent and Trademark Office." Accordingly, such regulations have been codified in the Code of Federal Regulations and are followed by the courts so long as they are "not inconsistent with the law."

The Code of Federal Regulations explicitly requires that the "specific reference" called

---

[5]    The '045 patent was filed on November 12, 1996, and the '690 patent was filed on August 3, 2000. This version of the statute was in effect on the filing date of these patents, and accordingly, this version governs the analysis in this case. *See* 35 U.S.C. §§ 119 and 120 (2006), Effective Dates of Amendments.

for by Sections 119 and 120 be set forth in the first sentence of the specification

> (2) *Any nonprovisional application claiming the benefit of one or more prior filed copending nonprovisional applications* or international applications designating the United States of America *must contain or be amended to contain <u>in the first sentence of the specification</u> following the title a reference to each such prior application*, identifying it by application number (consisting of the series code and serial number) or international application number and international filing date and indicating the relationship of the applications.
>
> *       *       *
>
> (4) *Any nonprovisional application claiming the benefit of one or more prior filed copending provisional applications must contain or be amended to contain <u>in the first sentence of the specification</u> following the title a reference to each such prior provisional application*, identifying it as a provisional application, and including the provisional application number (consisting of series code and serial number).

37 C.F.R. §§ 1.78(a)(2) and (a)(4) (1996) (emphasis added).  This same requirement is set forth in the Manual of Patent Examining Procedure ("MPEP")[6]:

> 3. The second application must contain a specific reference to the prior application(s) *in the specification*.

MPEP § 201.11 (6th ed., Rev. 2, July 1996, pp. 200-29 & 200-30 (emphasis added)).  Moreover, the MPEP expressly notes that "[i]n view of this requirement, the right to rely on a prior application *may be waived or refused* by an applicant by refraining from inserting a reference to the prior application in the specification of the later one."  *Id.* at 200-30 (emphasis added).

Courts have adhered closely to the requirements in 37 C.F.R. § 1.78, finding that if an applicant does not include a priority claim in the first sentence of the specification, the patent is not entitled to the benefit of the earlier filing date.  The requirements were recognized by the

---

[6] The MPEP is a manual published by the Patent Office that provides "patent examiners, applicants, attorneys, agents, and representatives of applicants with a reference on the practices and procedures relative to the prosecution of patent applications before the Patent and Trademark Office."  MPEP, 6th ed., Rev. 2, July 1996, Foreword.  The MPEP is not binding on the courts, however, the Federal Circuit has stated that the MPEP is "entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith."  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, n. 10 (Fed. Cir. 1995).

Ninth Circuit as early as 1962 in *Hovlid v. Asari*, 305 F.2d 747, 750-52 (9th Cir. 1962).  In that

case, the Court found that:

> The meaning of the phrase 'specific reference' as it appears in Section 120 is clarified by Rule 78 (C.F.R., Chapter I of Title 37, § 1.78) of the Rules of Practice of the United States Patent Office, 35 U.S.C.A. Appendix.
>
> It seems clear that if the benefit of the filing date of a prior application is claimed, the subsequent application must contain or be amended to contain a reference ***in the specification*** to the prior application identifying it by serial number and filing date and indicating the relationship of the applications.  Having failed to state the serial number, filing date and the relationship of the second patent to the abandoned application, there seems to be a complete failure to comply with Rule 78 and Section 120, and consequently, a waiver of the benefits afforded by the latter section.

*Id.* at 751-52 (emphasis added).  In *Hovlid*, because the specification of the patent at issue did not

contain the serial number, filing date, and relationship to the earlier application, the Court found

that the patent was not entitled to the earlier filing date.  *Id.*  Notably, the Court further held that

the patent was invalid based on a prior public use conceded by the patent owner.  *Id.*

Numerous courts have acknowledged the requirement that a specific reference to the

earlier application must be included in the specification.  *See, e.g.*, *Sampson v. Ampex Corp.*, 463

F.2d 1042, 1044-45 (2d Cir. 1972); *Sticker Indus. Supply Corp. v. Blaw-Knox Co.*, 405 F.2d 90,

92-93 (7th Cir. 1968); *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 643 F. Supp.

2d 874 (W.D. Tex. Aug. 3, 2009), *aff'd*, 609 F.3d 1345 (Fed. Cir. 2010); *Simmons, Inc. v.

Bombardier, Inc.*, 328 F. Supp. 2d 1188, 1200-01 (D. Utah 2001).  In all of those cases, the

courts held that the patent at issue was not entitled to an earlier priority date because the patent

did not contain a "specific reference" as required by Section 120 and Rule 1.78.

The Federal Circuit has also followed the requirements set forth by Rule 1.78 in

determining whether a patent properly includes the "specific reference."  *See, e.g.*, *E.I. DuPont

de Nemours & Co. v. MacDermid Printing Solutions, LLC*, 525 F.3d 1353, 1360-61 (Fed. Cir.

2008); *Broadcast Innovation, LLC v. Charter Commc'n, Inc.*, 420 F.3d 1364, 1367 (Fed. Cir. 2005).  In *Broadcast Innovation*, for example, the district court held a patent invalid on summary judgment where the specification failed to reference an earlier-filed application, even though the priority claim to the earlier application had been made in the declaration/oath, in a transmittal letter, and in the PTO's data sheet.  *Broadcast Innovation, LLC v. Charter Commc'n Inc.*, Case No. 1:03-CV-02223, 2004 WL 4910037 (D. Col. Aug. 4, 2004), *rev'd on other grounds*, 420 F.3d 1364 (Fed. Cir. 2005).  The plaintiff argued in that case that Rule 1.78 was an invalid regulation because it was inconsistent with the language of the Section 120 and exceeded the authority of the Patent Office.  *Id.* at *6-7.  The district court disagreed, finding that:

> [s]uch regulatory language is, in effect, more narrow than that of the relevant statutory provision, 35 U.S.C. § 120, in that it requires not only specific reference to the earlier filed application, but it also requires said reference fall within the "***first sentence of the specification***."  It is this Court's opinion that such narrow language is not inconsistent with the relevant statutory provision enacted by Congress, that such narrow language is not beyond the scope of the authority delegated to the Patent and Trademark Office, and that such narrow language is not arbitrary, capricious, or manifestly contrary to the terms of the federal statute.

*Id.* at *7 (emphasis added).  The court went on to note that "the additional requirement that the patent applicant include all priority dates within a particular section of the patent application seems no more unjust than requiring the payment of a specific application fee."  *Id.*  Although the Federal Circuit reversed the ruling on other grounds, the court cited the requirements of Rule 1.78 with approval.  *Broadcast Innovation*, 420 F.3d at 1367; *see also Encyclopaedia Britannica*, 643 F. Supp. 2d 874, *aff'd*, 609 F.3d 1345 (Fed. Cir. 2010).

In addition to holding that a priority claim must be included in the first sentence of the specification, courts have held that such a claim must accurately recite the serial number, filing date, and relationship of the application.  *See, e.g.*, *Simmons*, 328 F. Supp. 2d at 1201; *Sampson*, 463 F.2d at 1045 (finding the patent at issue invalid because it did not contain a "'specific

reference' to [the] serial number, and filing date, and a statement of the relationship between the two applications, as required by Rule 78(a)").

### 3.   Later-Filed Applications In A Chain Cannot Cure A Defective Priority Claim In An Intermediate Application In The Chain

The Federal Circuit has also expressly held that, for a later-filed application to receive the priority date of an earlier application, "each application in the chain of priority [must] refer to the prior applications." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1352 (Fed. Cir. 2010). Thus, where an intermediate application fails to claim priority properly to an earlier application, any subsequently filed application also cannot claim priority to the earlier application. *Id.* at 1351. Even where the later-filed application references the earlier application, such a reference does not cure the defect in the intermediate application, and the later application is not entitled to the filing date of the earlier application. *Id.*

In *Encyclopaedia Britannica*, the patent holder asserted that two of the patents-in-suit were entitled to the priority date of an earlier application through a chain of intermediate patents and patent applications. *Id.* at 1347. The district court held that the patents-in-suit were not entitled to claim priority to the earlier application because of a defect in an intermediate application in the chain of priority. *Id.* The intermediate application was missing its first page entirely and thus contained no reference to the earlier application. *Id.* The Federal Circuit affirmed the district court's decision and held that the patents-in-suit could not "amend the [intermediate application] and restore its entitlement to priority." *Id.* at 1351.

### 4.   Invalidity Based On Prior Public Use

A patent is barred under 35 U.S.C. § 102(b) if the claimed invention was in public use in the United States more than one year prior to the effective filing date of a patent. *See Zenith Elecs. Corp. v. PDI Commc'n. Sys., Inc.*, 522 F.3d 1348, 1356 (Fed. Cir. 2008). Section 102(b)

states that a person shall be entitled to a patent unless: "(b) the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  "An invention is in public use if it is shown to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality."  *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008).  For example, demonstration of a prototype to the public constitutes a prior public use that may invalidate a patent claim.  *See Netscape Commc'n Corp. v. Konrad*, 295 F.3d 1315, 1321-22 (Fed. Cir. 2002) (display of a prototype to University staff was prior public use); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1370-73 (Fed. Cir. 2007) (display of a product at a trade show was prior public use).

### B.     The Effective Filing Date Of The Patents-In-Suit Is November 12, 1996

#### 1.     The '690 And '045 Patents Are Not Entitled To The Benefit Of The Filing Date Of The Provisional Application

As set forth above in Section III.A.2 (pages 11-16), the applicable statutes and regulations unambiguously require that to benefit from the filing date of an earlier application the serial number and filing date of the earlier application must be set forth "***in the first sentence of the specification*** following the title."  37 C.F.R. § 1.78 (emphasis added).  But the specifications of the '690 and '045 patents do ***not*** contain any reference to the Provisional Application, let alone a specific reference in the first sentence of the specification.  *See* Hong Exs. 1-2. The unasserted '045 patent does not claim priority to any earlier filed application, and the '690 patent claims priority only to the November 12, 1996 filing date of the '045 patent.  *Id.*  Neither patent is entitled to the benefit of the filing date of the Provisional Application because neither contains a "specific reference" to that application.  As a result, as a matter of law, the effective filing date for the '690 and '045 patents is November 12, 1996.

The requirements of Rule 1.78 have been followed and upheld by numerous courts.

*Broadcast Innovation*, 420 F.3d at 1367; *Hovlid*, 305 F.2d at 750-52; *Sampson*, 463 F.2d at 1044-45; *Encyclopaedia Britannica*, 643 F. Supp. 2d at 880-82, *aff'd*, 609 F.3d 1345 (Fed. Cir. 2010); *Sticker Indu*s., 405 F.2d at 92-93; and *Simmons*, 328 F. Supp. 2d at 1200-01.  In doing so, these courts have held patentees to a strict standard.

For example, in *Simmons*, the court found that even though the specification included the serial number and date of the earlier application, it failed to include the specific reference required by Section 120 because it misstated the relationship between the applications. *Simmons*, 328 F. Supp. 2d at 1201.  Specifically, by error of the patent examiner, the patent-in-suit indicated that the earlier application was a grandparent of the patent, rather than a parent of the patent.  *Id.* at 1197-98.

The *Simmons* court found that the Rules were unambiguous and noted the important public policy that is advanced by the requirement of a specific reference:

> This requirement [of making a specific reference] imposes no great hardship on an applicant, since he is assumed to be intimate with the details of the relationship of his various applications and the public stands to benefit by being able to determine the effective date of an application without engaging in a long and expensive search and comparison of previous applications.  *Id.* at 1201; *see also Sampson*, 463 F.2d at 1045 ("The inventor is the person best suited to understand the relation of his applications, and it is no hardship to require him to disclose this information.").

In *Encyclopaedia Britannica*, the Patent Office first found that, like here, an intermediate application preceding the patents-in-suit did not meet the requirements of Section 120 and Rule 1.78 and thus did not effectively claim priority to an earlier application.  *Encyclopaedia Britannica*, 643 F. Supp. 2d at 880.  Approving the Patent Office's reliance on Rule 1.78, the district court held that the patents-in-suit were not entitled to the filing date of the earlier application and were thus invalid under 35 U.S.C. § 102(b).  *Id.* at 881-82.

The purpose of Rule 1.78 is to require a patentee to specify its priority claims in the

patent itself. The burden is on the patentee to ensure that accurate priority information is included in the patent. The public is not expected to analyze the patent's file history or related patents to determine the effective filing date. Because the '690 and '045 patents do not refer to the Provisional Application, they cannot benefit from its November 1995 filing date.

### 2. The '558, '856, '501, And '998 Patents Likewise Are Not Entitled To The Priority Date Of The Provisional Application

The unasserted '045 patent and the Patents-In-Suit form a chain of related patent applications. *See supra* p. 5. Unlike the '690 and '045 patents, the later-filed '558, '856, '501, and '998 patents do refer to the Provisional Application (and the other pertinent applications in the chain of priority) in the first sentence of their specifications. However, Worlds' attempt in these later patents to claim priority to the Provisional Application filing date fails because the intermediate '690 and '045 patents did not satisfy the established requirements to receive the benefit of the Provisional Application filing date, thereby breaking the chain in the priority claim. *See Encyclopaedia Britannica*, 609 F.3d at 1351-52.

Because the effective filing date for the '690 and '045 patents is November 12, 1996, the earliest effective filing date of the '558, '856, '501, and '998 patents is also the same date. Thus, the earliest effective filing date for all of the Patents-In-Suit is ***November 12, 1996***.

### C. The Patents-In-Suit Are Invalid Because Of Worlds' Prior Public Use Of The Claimed Inventions

Activision's Interrogatory Nos. 1-3 requested information about the development of the inventions of the Patents-In-Suit and Worlds' products that embody the asserted claims. In Worlds' responses, Worlds has admitted that its *AlphaWorld* and *Worlds Chat* products were in public use and embodied the asserted patent claims more than one year before the November 12, 1996 effective filing date of the Patents-In-Suit – that is, ***before November 12, 1995***.

Worlds has admitted that *AlphaWorld* was in public use as of June 1995, and that

*AlphaWorld* embodied all of the asserted patent claims by at least September 1995. For example, Worlds' interrogatory responses state: "On approximately June 29, 1995, Worlds released *AlphaWorld*" and "[a]s of at least September 1995, *AlphaWorld* practiced all asserted claims." Hong Ex. 14 at 6, 10; *see supra* pp. 6-8. Furthermore, Worlds has admitted that the versions of *AlphaWorld* released subsequent to September 1995 – which would include those released in October 1995 – also practiced the asserted claims. As noted on pages 7-8 above, these admissions are corroborated by independent, contemporaneous evidence.

Similarly, Worlds has admitted that *Worlds Chat* was in public use as of April 1995, and that *Worlds Chat* practiced the claimed inventions by spring of 1995. For example, Worlds' interrogatory responses say: "in April 1995, KA Worlds released the *Worlds Chat* software" and "[u]pon information and belief, *Worlds Chat* practiced the claimed invention as of approximately April 1995." Hong Ex. 14 at 6, 10; *see supra* pp. 8-10. As noted on page 9 above, these admissions too are corroborated by independent, contemporaneous evidence.[7]

For purposes of this motion, Activision does not contest the admissions in Worlds' interrogatory responses. Thus, there are no genuine issues of material fact concerning the prior use of Worlds' *AlphaWorld* and *Worlds Chat* products. *See Pongrac*, 632 F. Supp. at 128. Because it is undisputed that these products were in public use more than one year before the effective filing date of the Patents-In-Suit, the asserted claims are invalid under Section 102(b).

## IV. CONCLUSION

For the foregoing reasons, Activision respectfully requests that the Court enter summary judgment that (1) the effective filing date of the '690, '558, '856, '501, and '998 patents is November 12, 1996; and (2) the asserted claims are invalid under 35 U.S.C. § 102(b).

---

[7]     Worlds' interrogatory responses are also supported with claim charts purporting to show how the *AlphaWorld* and *Worlds Chat* products embodied every limitation of all of the asserted patent claims. Hong Ex. 14 at 13; Exs. 18 and 19.

Respectfully submitted,

Dated:  June 18, 2013            By:     */s/ Blake B. Greene*

Blake B. Greene (BBO #681781)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts  02199-3600
(617) 951-7000
*blake.greene@ropesgray.com*

Jesse J. Jenner (*pro hac vice*)
*jesse.jenner@ropesgray.com*
Gene W. Lee (*pro hac vice*)
*gene.lee@ropesgray.com*
Brian P. Biddinger (*pro hac vice*)
*brian.biddinger@ropesgray.com*
Kathryn N. Hong (*pro hac vice*)
*kathryn.hong@ropesgray.com*
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
T: (212) 596-9000
F: (212) 596-9050

ATTORNEYS FOR DEFENDANTS,
ACTIVISION BLIZZARD, INC.,
BLIZZARD ENTERTAINMENT, INC.
AND ACTIVISION PUBLISHING,
INC.