# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

WORLDS, INC.,

    Plaintiff,

v.

ACTIVISION BLIZZARD, INC., BLIZZARD
ENTERTAINMENT, INC., and ACTIVISION
PUBLISHING, INC.,

     Defendants.

Civil Action No. 1:12-CV-10576-DJC

JURY TRIAL DEMANDED

## WORLDS, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON INVALIDITY

## Table of Contents

I.    Introduction ............................................................................................................ 1

II.   Statement of Facts ................................................................................................. 3

    A.   Worlds' patents describe a groundbreaking invention that was
         originally disclosed in a November 13, 1995 provisional patent
         application. .................................................................................................. 3

    B.   While prosecuting the '045 patent, Worlds repeatedly claimed
         priority to its November 1995 provisional application. ............................... 4

    C.   While prosecuting the '690 patent, Worlds again expressly
         claimed priority to its November 1995 provisional application. ................. 6

    D.   The '558, '856, '501, and '998 patents all expressly claim
         priority to Worlds' November 1995 provisional application. ...................... 7

    E.   Worlds has requested Certificates of Correction for the '045
         and '690 patents. ........................................................................................ 7

III.  Standard of Review ............................................................................................... 8

IV.   Argument ............................................................................................................... 8

    A.   Worlds' patents are entitled to a November 13, 1995 effective
         filing date because the patentees properly referenced that date
         while prosecuting the '045 and '690 patents. ............................................ 9

        1.   The November 29, 2000 version of 37 C.F.R. § 1.78
             applies here. ....................................................................................... 9

        2.   Under 37 C.F.R. § 1.78, a patent is entitled to the
             benefit of an earlier-filed application's filing date if the
             patentee includes an appropriate reference in the later-
             filed patent application. ................................................................... 10

        3.   The applications for the '045 and '690 patents properly
             claimed the benefit of Worlds' November 13, 1995
             provisional application. .................................................................... 14

    B.   The Court should correct the purported omissions from the
         '045 and '690 patents. .............................................................................. 15

        1.   The Court has authority to correct harmless errors in
             issued patents. ................................................................................. 15

2.    The Court should correct the omissions from the '045 and '690 patents. ........................................................... 17

C.    Summary judgment would be improper given Worlds' pending requests for Certificates of Correction for the '045 and '690 patents. ...................................................................................... 19

V.  Conclusion ............................................................................................. 20

## Table of Authorities

**Cases**

*Adrain v. Hypertech, Inc.*,
    2001 WL 740542 (D. Utah Apr. 18, 2001)....................................................... 10, 19

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................. 8

*Biotec Biologische v. Biocorp*,
    249 F.3d 1341 (Fed. Cir. 2001)............................................................................. 18

*Carotek, Inc. v. Kobayashi Ventures, LLC*,
    875 F. Supp. 2d 313 ( S.D.N.Y. 2012)................................................................. 10

*CBT Flint Partners, LLC v. Return Path, Inc.*,
    654 F.3d 1353 (Fed. Cir. 2011)............................................................................. 16

*E.I. du Pont de Nemours & Co. v. MacDermid Printing*,
    525 F.3d 1353 (Fed. Cir. 2008)..................................................................... passim

*Eli Lilly & Co. v. Barr Labs., Inc.*,
    251 F.3d 955 (Fed. Cir. 2001)................................................................................ 8

*Fiber Systems International, Inc. v. Applied Optical Systems, Inc.*,
    2009 WL 3571350 (E.D. Tex. Oct. 26, 2009) ..................................................... 16

*Hoffer v. Microsoft Corp.*,
    405 F.3d 1326 (Fed. Cir. 2005)................................................................ 2, 15, 16

*Inland Paperboard & Packaging, Inc. v. Sihl GmbH*,
    2005 WL 1528240 (S.D. Ind. June 21, 2005) ..................................................... 19

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed. Cir. 1995).............................................................................. 10

*Pfizer, Inc. v. Teva Pharmaceuticals*,
    882 F. Supp. 2d 643 (D. Del. 2012)...................................................................... 20

*Simmons, Inc. v. Bombardier, Inc.*,
    328 F. Supp. 2d 1188 (D. Utah 2001)................................................................... 18

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003).............................................................................. 8

*TracBeam, L.L.C. v. AT & T, Inc.*,
  2013 WL 250532 (E.D. Tex. Jan. 23, 2013) ........................................................ 16

**Statutes**

35 U.S.C. § 102(b) ............................................................................................ 2, 9, 13, 15

35 U.S.C. § 119 ................................................................................................... 1, 9, 10, 12

35 U.S.C. § 120 ..................................................................................................... 1, 9, 10

35 U.S.C. § 282 ................................................................................................................ 8

35 U.S.C. §§ 254 ............................................................................................................ 19

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................................... 8

**Regulations**

37 C.F.R. § 1.102 ............................................................................................................ 7

37 C.F.R. § 1.76(b)(5) (2000) ............................................................................. 12, 13, 14

37 C.F.R. § 1.78(a) (2000) ...................................................................................... 12, 13

**Other Authorities**

Annotated Patent Digest § 6:7 .................................................................................. 16

*Changes to Implement the Patent Business Goals*,
  65 F.R. 54,604 (Sept. 8, 2000) ............................................................................ 12

Plaintiff Worlds, Inc. (Worlds) files this memorandum in opposition to the Motion for Summary Judgment on Invalidity (Dkt. No. 84) filed by Defendants Activision Blizzard, Inc., Blizzard Entertainment, Inc., and Activision Publishing, Inc. (collectively, Defendants).

## I.   **Introduction**

In an attempt to avoid the merits of Worlds' infringement claims, Defendants incorrectly say this Court should dismiss this lawsuit and invalidate Worlds' entire patent portfolio based on harmless scriveners' errors in two of Worlds' patents. Despite the fact that Worlds has consistently claimed priority to its November 13, 1995 provisional patent application, Defendants contend that Worlds is not entitled to that effective filing date for any of the patents-in-suit because the U.S. Patent and Trademark Office (PTO) failed to include that priority information in the as-issued versions of U.S. Patent Nos. 6,219,045 (the '045 patent) and 7,181,690 (the '690 patent). Defendants are wrong.

*First*, the patents-in-suit are entitled to a November 13, 1995 priority date because Worlds properly claimed entitlement to that effective filing date during prosecution of the '045 and '690 patents. Under 35 U.S.C. §§ 119(e) and 120, and 37 C.F.R. § 1.78, a patentee may claim priority to an earlier-filed application by including priority information in its patent application. *See E.I. du Pont de Nemours & Co. v. MacDermid Printing*, 525 F.3d 1353 (Fed. Cir. 2008). By referring to Worlds' 1995 provisional application in data sheets filed during prosecution of the '045 and '690 patents, Worlds satisfied this requirement and is entitled to the November 13, 1995 effective filing date.

*Second*, irrespective of whether Worlds properly claimed priority, the Court is empowered to, and should, correct the harmless scriveners' errors in the '045 and '690 patents. Under Federal Circuit law, "[a]bsent evidence of culpability or intent to deceive

by delaying formal correction, *a patent should not be invalidated based on an obvious administrative error.*" *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005).[1] Indeed, "[w]hen a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court . . . ." *Id.* Here, there can be no dispute that (1) any errors in the '045 and '690 patents were harmless and administrative; (2) setting aside any administrative error, the correct effective priority date of the patents-in-suit is November 13, 1995; (3) the PTO has already recognized the correct November 13, 1995 effective filing date on its PAIR database and website; and (4) there is no evidence of culpability or intent on the part of Worlds to delay formal correction. Accordingly, the Court has no basis to invalidate any of Worlds' patents.

*Third*, Defendants' motion will become moot when the PTO issues Certificates of Correction for the '045 and '690 patents. On July 5, 2013, Worlds requested that the PTO issue Certificates of Correction to amend the front pages and specifications of the '045 and '690 patents to refer to Worlds' November 1995 provisional application and state the correct effective filing date. Once these petitions are granted, Defendants' purported validity arguments will be moot.

In sum, *Worlds Chat* and *AlphaWorld* cannot be invalidating prior art under 35 U.S.C. § 102(b) because those platforms were demonstrated publicly less than one year before the November 13, 1995 effective filing date of all five patents-in-suit. This Court should deny Defendants' Motion for Summary Judgment on Invalidity.

---

[1]   All emphasis in this Opposition is added.

## II.   Statement of Facts[2]

### A.   Worlds' patents describe a groundbreaking invention that was originally disclosed in a November 13, 1995 provisional patent application.

Worlds is a company that develops core virtual world technologies. Decl. of T. Kidrin ¶ 6. Worlds has been in continuous operation since its inception in the mid-1990s, when it was one of the original innovators in the field of interactive three-dimensional entertainment software. *See id.* ¶ 3–4. Contrary to Defendants' unsupported assertion that Worlds is merely a patent holding company, Worlds remains a virtual-world innovator. *See id.* ¶ 6.

In 1995, four Worlds employees — Stephen Adler, S. Mitra Ardon, Judith Challinger, and David Leahy (the named inventors) — discovered several novel solutions to crucial problems in the area of software development. See Ex. 1 at 5–7; Ex. 4. They arrived at these solutions while developing Worlds' two groundbreaking software platforms — *Worlds Chat* and *AlphaWorld* — both of which enabled remote users to chat and interact over the Internet in graphically rich, three-dimensional virtual environments. Decl. of T. Kidrin ¶ 5. Worlds first demonstrated *Worlds Chat* and *AlphaWorld* in April and June 1995, respectively. *See* Defs' Ex. 14. Worlds does not dispute that, by mid-to-late 1995, *Worlds Chat* and *AlphaWorld* practiced all the asserted claims. *See id.*

On November 13, 1995, the named inventors filed a provisional patent application. *See* Ex. 2. This provisional application formed the basis of Worlds' first issued patent, the '045 patent (issued on April 17, 2001), and the five patents asserted in this case. *See* Exs. 3–8. These patents-in-suit, all of which make the same disclosure as the 1995

---

[2]   Worlds does not dispute the facts set forth in Defendants' Statement of Undisputed Material Facts. (*See* Dkt. No. 85.) Defendants' motion, however, is based on a purely legal argument that does not turn on disputed facts. So for purposes of Defendants' motion, the parties do not disagree as to any material facts; the parties disagree only as to how the law applies to those facts. Pursuant to Local Rule 56.1, however, Worlds does assert additional facts in this section that are relevant and material to the Court's analysis.

provisional application, are U.S. Patent Nos. 7,181,690 (issued February 20, 2007); 7,493,558 (issued on February 17, 2009); 7,945,856 (issued May 17, 2011); 8,082,501 patent (issued December 20, 2011); and 8,145,998 (issued March 27, 2012). *See id.*

**B.    While prosecuting the '045 patent, Worlds repeatedly claimed priority to its November 1995 provisional application.**

In prosecuting the '045 patent, Worlds originally filed a provisional application on November 13, 1995, numbered *60/020,296*. *See* Ex. 2.   Less than one year later, on November 12, 1996, Worlds filed nonprovisional patent application number 08/747,420, which matured into the '045 patent. *See* Ex. 3.  This nonprovisoinal application names the same inventors and makes materially the same disclosure as the provisional application. *Compare* Exs. 2 and 3.

Throughout the prosecution of the '045 patent, Worlds consistently referenced the *60/020,296* provisional application number to reflect its original November 13, 1995 filing date.   For example, on November 12, 1996, when prosecuting the '045 nonprovisional application, the patentees submitted a data sheet expressly claiming the benefit of Worlds' original November 1995 provisional application, number *60/020,296*: "This application claims priority from each of the following Application Nos./filing dates: *60/020,296* / June 24, 1996." Ex. 9 at WORLDS074149.

Sir:

Transmitted herewith for filing is the [x] patent application,
[] continuation-in-part patent application of

indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D. C. 20231

By _____
Robert Bell

Inventor(s): Dave Leahy, Judith Challinger, B. Thomas Adler, S. [Mitra] Ardon

For:  SCALABLE VIRTUAL WORLD CHAT CLIENT-SERVER SYSTEM

[x]  This application claims priority from each of the following Application Nos./filing dates:
      60/020,296  / June 24, 1996  ; _____/_____; _____/_____.

*Id.*  With this, the patentees sought to ensure that the '045 patent would properly refer to the 1995 provisional application, number *60/020,296*. Although the data sheet referenced

a June 24, 1996 filing date, that was a typographical error; the sheet should have listed the November 13, 1995 original application date.[3] *See* Ex. 2. To be sure, the patentees also filed inventor declarations that accurately claimed priority to Worlds' 1995 provisional application, number 60/020,296. *See* Ex. 9 at WORLDS074187–92.

Later, to correct the June 24, 1996 reference and make certain that the PTO would recognize Worlds' accurate priority claim, the patentees filed a Request for Corrected Filing Receipt, which explained:

> There is an error in that the priority data furnished on the Application Transmittal, specifically "This application claims priority from each of the following Application Nos./filing dates: 60/020,296, filed June 24, 1996," has been omitted from inclusion on the official Filing Receipt. *The priority date should read*
>
> — *60/020,296, filed **November 13, 1995** —*
>
> not "filed June 24, 1996" as mistakenly typed on the Application Transmittal.
>
> The correction is not due to any error by the applicant and no fee is due.

*Id.* at WORLDS074322. As an attachment to this Request, Worlds filed a revised form reflecting the the correct November 13, 1995 effective filing date.



[x] This application claims priority from each of the following Application Nos./filing dates: 60/020,296 / ~~June 24, 1996~~ ; ___/___ ; ___/___ .
November 13, 1995

*Id.* at WORLDS074324. The PTO, however, failed to include any reference to Worlds' provisional patent application in the '045 patent. *See* Ex. 3.

Despite the lack of priority information in the issued patent, ***the PTO presently recognizes that the '045 patent is entitled to a November 13, 1995 priority date***. Indeed,

---

[3]   To be clear, Defendants' do not dispute that November 13, 1995 is the correct filing date of provisional patent application number 60/020,296. Defs.' MSJ at 2.

the PTO lists the '045 patent's November 13, 1995 effective priority date on its own

public PAIR database, as reflected on the PTO's website:

| 08/747,420 | SCALABLE VIRTUAL WORLD CHAT CLIENT-SERVER SYSTEM | | | | | | 173} |
|---|---|---|---|---|---|---|---|
| Select New Case | Application Data | Transaction History | Continuity Data | Fees | Published Documents | Address & Attorney/Agent | Display References |

**Parent Continuity Data**

| Description | Parent Number | Parent Filing or 371(c) Date | Parent Status |
|---|---|---|---|
| This application Claims Priority from Provisional Application | 60/020,296 | 11-13-1995 | Expired |

Ex. 11.

**C.    While prosecuting the '690 patent, Worlds again expressly claimed priority to its November 1995 provisional application.**

On August 3, 2000, Worlds filed patent application number 09/632,154, which

matured into the '690 patent. The '690 patent is a continuation of the '045 patent and, as

such, shares a specification with the '045 patent and makes the same disclosure as the

1995 provisional application. *Compare* Exs. 2, 3, and 4.

In prosecuting the application for the '690 patent, the patentees again claimed the

benefit of Worlds' November 13, 1995 provisional patent application.  For example, the

data sheet for the '690 patent application includes a section titled "CONTINUING

DATA," which states: "This application is a CON of 08/747,420 11/12/1996 PAT

6,219,045 *which claims benefit of 60/020,296 11/13/1995*."



Ex. 10 at WORLDS002524.

Similarly, in communications to the examiner, Worlds' attorneys consistently

referenced the 1995 priority date.  For example, in Worlds' April 8, 2004 response to the

PTO's March 30, 2004 Office Action, Worlds accurately explained:

> The present application is a continuation of application serial number 08/747,420, which was filed on November 12, 1996 (now U.S. Patent No. 6,219,045 Bl), which *claims the benefit of provisional application number 60/020,296, which was filed on **November 13, 1995**.*

*Id.* at WORLDS002222.[4]

And, in a March 24, 2003 Petition to Make Special under 37 C.F.R. § 1.102, Worlds reiterated that the issued patent is entitled to a 1995 priority date:

> The present application was filed on August 3, 2000 and is a continuation of U.S. Serial No. 08/747,420, which was filed on November 12, 1996 and issued as U.S. Patent No. 6,219,045 .... The Parent Application *claims the benefit of Provisional Application Serial No. 60/020,296, which was filed on **November 13, 1995**.*

*Id.* at WORLDS002364.

Despite these clear statements in the prosecution history, the PTO published the '690 patent without referencing Worlds' provisional application or 1995 priority date.

**D.      The '558, '856, '501, and '998 patents all expressly claim priority to Worlds' November 1995 provisional application.**

As Defendants recognize at page 5, except for the '690 patent, all other patents asserted in this suit (the '558, '856, '501, and '998 patents) claim priority to Worlds' November 13, 1995 provisional application.   All of these patents include complete priority information on their cover pages, and they all state the correct effective filing date information in the first sentences of their specifications. *See, e.g.*, Exs. 5–8.

**E.      Worlds has requested Certificates of Correction for the '045 and '690 patents.**

As stated, the PTO already has recognized the corrected priority date on its PAIR website, and in correspondence found in the '045 and '690 patent prosecution histories.

---

[4]      Worlds made similar statements in other correspondence with the examiner. *See, e.g.*, Ex. 10 at WORLDS002242 (Worlds' Jan. 6, 2004 Response to Office Action mailed Dec. 31, 2003); *id.* at WORLDS002390 (Worlds' March 4, 2003 Response to Office Action mailed on December 20, 2002).

*See* Ex. 11.   On July 5, 2013, Worlds requested that the PTO issue Certificates of Correction to include references to the 1995 provisional application on the front pages of the '045 and '690 patents and at the beginning of their specifications.   *See* Decl. of A. Weiser ¶¶ 3–6 & Exs. 1–4.   Worlds' requests are currently pending.

### III.   Standard of Review

Patents are presumed valid under the Patent Statute.   *See* 35 U.S.C. § 282.   To overcome this presumption, Defendants must prove invalidity ***by clear and convincing evidence***.   *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003).   As the movant, Defendants also bear the burden of establishing the absence of any genuine issues of material fact and their legal entitlement to judgment as a matter of law.   Fed. R. Civ. P. 56(c).

Under these standards, a movant seeking to invalidate a patent on summary judgment must submit such clear and convincing evidence of invalidity that no reasonable jury could find otherwise.   *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).   All of the evidence of validity submitted by Worlds, as the non-movant, must be credited and all justifiable inferences from that evidence must be drawn in Worlds' favor.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### IV.   Argument

Defendants' motion for summary judgment is meritless for at least three reasons. First, the patent applications for the '045 and '690 patents validly claimed the benefit of the 1995 provisional application's filing date.   Second, the Court should correct the issued patents to add references to the 1995 provisional application.   Third, Defendants' motion will soon be moot in light of Worlds' pending requests for Certificates of

Correction.  In sum, all five patents-in-suit are entitled to a November 13, 1995 effective filing date and none are invalid under 35 U.S.C. § 102(b).

**A.    Worlds' patents are entitled to a November 13, 1995 effective filing date because the patentees properly referenced that date while prosecuting the '045 and '690 patents.**

The '045 and '690 patents properly claim priority to provisional application no. 60/020,296, filed November 13, 1995.  Accordingly, only activities before November 13, 1994 can invalidate the patents-in-suit under 35 U.S.C. § 102(b).  Therefore, the 1995 demonstrations of *Worlds Chat* and *AlphaWorld* are not invalidating bars under § 102(b).

**1.    The November 29, 2000 version of 37 C.F.R. § 1.78 applies here.**

Whether the '045 and '690 patents are entitled to a November 13, 1995 effective filing date turns partly on the interpretation of three provisions: 35 U.S.C. §§ 119(e) and 120, and 37 C.F.R. § 1.78.  As an initial matter, for purposes of this case, the requirements of 35 U.S.C. §§ 119 and 120 have remained materially the same during relevant times, so it does not matter which versions of those provisions the Court applies.

By contrast, 37 C.F.R. § 1.78 has been revised several times in fairly consequential ways.  Section 1.78 describes how a patentee must claim the benefit of the filing date of an earlier-filed patent application.  Defendants incorrectly assume, without discussion or justification, that the 1996 version of § 1.78 applies.  Defendants are wrong.

Contrary to Defendants' assumption, the PTO already determined that the November 29, 2000 version of § 1.78 applies here.  As the PTO explained in the Manual on Patent Examining Procedure (MPEP), ***"[f]or applications filed before November 29, 2000 it is the version of 37 C.F.R. § 1.78, which was in effect as of November 29, 2000, that applies*.**"  MPEP § 1481.03 (8th ed., rev'd Aug. 2012) (attached as Ex. 12).  Here, ***the applications for the '045 and '690 patents were both filed before November 29,***

*2000* (on November 12, 1996, and August 8, 2000). Thus, pursuant to the PTO's own guidance, the Court should apply the November 29, 2000 version of § 1.78 to assess whether the '045 and '690 patents are entitled to a November 13, 1995 effective filing date.[5] *Cf. Adrain v. Hypertech*, 2001 WL 740542, at *3 (D. Utah Apr. 18, 2001) (citing the 2000 version of § 1.78 when addressing a patent application filed in 1993); *Carotek, Inc. v. Kobayashi Ventures*, 875 F. Supp. 2d 313, 321, 330 ( S.D.N.Y. 2012) (discussing the 2000 version of § 1.78 when addressing a patent application filed in 1999).

> **2.    Under 37 C.F.R. § 1.78, a patent is entitled to the benefit of an earlier-filed application's filing date if the patentee includes an appropriate reference in the later-filed patent application.**

Under 35 U.S.C. § 119(e), a nonprovisional application may be entitled to claim priority to an earlier provisional application. Similarly, under 35 U.S.C. § 120, a continuation patent may be entitled to claim priority to an earlier-filed application.

Section 119(e) provides that a nonprovisional application is entitled to claim priority based on an earlier-filed provisional application if it meets the following criteria: (1) "the provisional must comply with the requirements of section 112, first paragraph, and the non-provisional must be for the same invention"; (2) "the non-provisional must be filed within twelve months of the provisional"; (3) "there must be an overlap of

---

[5]        Applying the November 29, 2000 version of § 1.78 makes especially good sense in this case. Even though the applications for the '045 and '690 patents were filed before November 29, 2000, the applications for those two patents were still pending on November 29, 2000 and thus could still have been amended or recognized to comply with the November 29, 2000 version of § 1.78. Under all versions of § 1.78, so long as an application remains pending, the application may be "amended to contain" the "specific reference" required by §§ 119(e) and 120. 37 U.S.C. §§ 1.78(a)(2) & (a)(4) (1996, 2000). The only case cited by Defendants that touches on this issue, *Broadcast Innovation v. Charter Communications*, 2004 WL 4910037 (D. Colo. 2004), is inapplicable. In that case, the plaintiff argued that the 2003 version of § 1.78 applied to a patent application filed in 1999 and issued in June 2000. The court disagreed and applied the 1997 version of § 1.78. Among other reasons, *Broadcast Innovation* is different because, there, the patent at issue was *issued* before November 29, 2000 and was no longer *pending*. *Id.* In addition, the plaintiff cited nothing to support his contention that the 2003 version applied. In any event, under the MPEP, the court should have applied the November 29, 2000 version. On appeal, the Federal Circuit reversed the trial court's decision, upheld the validity of the patent at issue, and took no position on the question of which version of § 1.78 applied. Thus, this question remains unsettled by the Federal Circuit.

inventorship"; and (4) "the non-provisional must include a specific reference to the provisional." *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353, 1354-63 (Fed. Cir. 2008).   Here, it is undisputed that Worlds' 1995 provisional and 1996 nonprovisional applications had the same inventors and materially the same written description, and that the nonprovisional application was filed within one year of the provisional application.   The same analysis holds true under § 120.

The only issue is whether Worlds' November 12, 1996 "non-provisional [application] include[s] a specific reference to the provisional" and whether the application for the '690 patent similarly includes an appropriate "specific reference." *See id.*   The answer for both applications is "Yes."

Section 1.78 of the Code of Federal Regulations governs how these "specific references" must be made, and explains that the "specific reference" need only identify the "application number (consisting of series code and serial number)" in the application data sheet.   The relevant provisions of the November 29, 2000 version of § 1.78 read:

> (2) [A]ny nonprovisional application claiming the benefit of one or more prior filed copending nonprovisional applications . . . must contain a reference to each such prior application, identifying it by application number (consisting of the series code and serial number) . . . and indicating the relationship of the applications.   *Unless the reference required by this paragraph is included in an **application data sheet** (§ 1.76), the specification must contain or be amended to contain such reference in the first sentence following any title.*
> . . .
> (4) Any nonprovisional application claiming the benefit of one or more prior filed copending provisional applications must contain a reference to each such prior provisional application, identifying it as a provisional application, and including the provisional application number (consisting of series code and serial number).   *Unless the reference required by this paragraph is included in an **application data sheet** (§ 1.76), the specification must contain or be amended to contain such reference in the first sentence following any title.*

37 C.F.R. § 1.78(a) (2000).

As the Commissioner of Patents explained in promulgating the applicable November 29, 2000 revisions to § 1.78, reference to an earlier-filed application in the application data sheet satisfies the "specific reference" requirement:

> Section 1.76(b)(5) states that providing [priority] information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120. While the patent rules of practice [ ] formerly required that this claim or specific reference be in the first line of the specification, *the relevant patent statute is broader and only requires that a claim to the benefit of (specific reference to) a prior provisional [ ] or a prior nonprovisional [ ] application be in the application which is making the priority claim. Since the application data sheet, if provided, is considered part of the application,* **the specific reference to an earlier filed ... application in the application data sheet satisfies the "specific reference" requirement of 35 U.S.C. 119(e)(1) or 120, and it also complies with § 1.78(a)(2) or § 1.78(a)(4) ...** , which sections are also correspondingly revised in this final rule to accept a specific reference in an application data sheet.

*Changes to Implement the Patent Business Goals*, 65 F.R. 54,604, 54,626 (Sept. 8, 2000); *see also* MPEP § 201.11 ("If the specific reference is only contained in the application data sheet, then the benefit claim information will be included on the front page of any patent . . ., but will not be included in the first sentence(s) of the specification.").

Accordingly, if a patentee provides appropriate priority information in a data sheet filed with a patent application, that is sufficient to satisfy the "specific reference required by 35 U.S.C. 119(e) or 120, and § 1.78(a)(2) or § 1.78(a)(4), and [the priority information] *need not otherwise be made part of the specification*." 37 C.F.R. § 1.76(b)(5) (2000). Defendants' mantra that the "specific reference to the earlier application must be included in the specification" is false. *See, e.g.*, Defs.' MSJ at 14.

In *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353 (Fed. Cir. 2008) (*DuPont*), the Federal Circuit applied § 1.78. In that case,

DuPont asserted a patent (the '859 patent) that had a provisional application filed in 2001, and nonprovisional application filed in 2002.[6] *Id.* at 1354–55. The data sheet for the 2002 application referenced the provisional application, but the issued patent did not. *Id.* The defendant argued that the '859 patent was invalid because DuPont publicly practiced the claims before the § 102(b) critical date. *Id.*

The validity of the '859 patent turned on whether DuPont was entitled to claim priority to the 2001 provisional application. The defendant argued that the 2001 provisional application date could not apply because "the filing receipt, published application, and issued patent did not reference the provisional, showing that the PTO did not recognize priority to the provisional[, and] DuPont did not alert the PTO that the priority information was missing until the patent issued." *Id.* DuPont countered that § 102(b) was no bar because the application for the '859 referenced the 2001 provisional application. *Id.* at 1356. The district court agreed with the defendant, finding that DuPont "failed to prove the earlier critical date." *Id.* at 1357.

The Federal Circuit reversed, finding that, "based on the undisputed facts contained in the prosecution history, the non-provisional application was entitled to the filing date of the provisional application as a matter of law." *Id.* at 1358. The Federal Circuit explained that "[a] reasonable person reading the language in the [application data sheet] would have concluded that the applicant was claiming priority to an earlier provisional application." *Id.* at 1361. It did not matter that the issued patent failed to include the priority information on its cover or in its specification. Accordingly, the Federal Circuit rejected defendant's argument, reversed the lower court, and refused to

---

[6]     For purposes of this case, the versions of §§ 1.76 and 1.78 in effect in February 2002 were materially the same as the versions that were in effect on November 29, 2000.

find DuPont's patent invalid because the "non-provisional application included a specific reference to the provisional application in the application data sheet." *Id.* at 1363.

> **3.    The applications for the '045 and '690 patents properly claimed the benefit of Worlds' November 13, 1995 provisional application.**

Here, like in *DuPont*, the application that matured into the '045 patent specifically referenced Worlds' provisional patent, number 60/020,296, in its data sheet and elsewhere, and complied with the requirements of § 1.78. Ex. 9; *see also* MPEP 201.11, part III.B (to claim entitlement to an earlier filing date, a patentee may include "a statement such as 'This application claims the benefit of U.S. Provisional Application No. 60/ — . . . in an application data sheet"). Similarly, the application that matured into the '690 patent claimed the benefit of the 1995 provisional application in its data sheet. *See* Ex. 10 at WORLDS00252437; *see also* C.F.R. § 1.76(b)(5) (2000) (if a patentee provides priority information in a "bibliographic data" sheet, that suffices to satisfy the "specific reference [requirement]").

In fact, the patentees in this case *did more* than the patentees in *DuPont*. Not only did Worlds include the requisite reference in the '045 patent application's data sheet, Worlds specifically requested a Corrected Filing Receipt when it realized the PTO might apply an erroneous effective filing date. *See* Ex. 9 at WORLDS074322. Moreover, in the application that matured into the '690 patent, Worlds submitted data sheets and other documents that consistently referenced the November 13, 1995 effective filing date. *See supra* Part II.C. Under *DuPont*, these disclosures are more than sufficient to satisfy the statutory language of 35 U.S.C. §§ 119 and 120 and operative requirements of the November 29, 2000 version of 37 C.F.R. § 1.78.

**B.      The Court should correct the purported omissions from the '045 and '690 patents.**

Irrespective of whether the '045 and '690 patents properly claim priority under 37 C.F.R. § 1.78, the Court has no basis to invalidate those patents.  Instead, the proper remedy would be for the Court to *correct* the '045 and '690 patents to avoid invalidating them based on harmless administrative errors.  If the Court were to recognize the correct priority information, all patents-in-suit would irrefutably share a November 13, 1995 effective filing date, and Defendants would have no argument that *Worlds Chat* and *AlphaWorld* are invalidating prior art under § 102(b).

### 1.      The Court has authority to correct harmless errors in issued patents.

In *Hoffer v. Microsoft Corp.*, 405 F.3d 1326 (Fed. Cir. 2005), the Federal Circuit cautioned that courts should not invalidate patents based on harmless administrative errors.  Instead, district courts should correct administrative errors on their own accord.

In *Hoffer*, the defendant (Microsoft) sought to invalidate a dependent patent claim because, as a result of an administrative error, the claim did not properly refer to the associated independent claim.  *Id.* at 1331.  To remedy this error, the plaintiff (Hoffer) asked the trial court to correct the patent by revising the relevant claim.  *Id.*  The trial court refused.  Despite the fact that the missing reference was a scrivener's error, the trial court "stated that it was powerless to correct the error," holding that "it ha[d] no authority to correct or ignore even a typographical error in a patent."  *Id.*

The Federal Circuit reversed and upheld the validity of the patent, explaining that, "[a]bsent evidence of culpability or intent to deceive by delaying formal correction, *a patent should not be invalidated based on an obvious administrative error*."  *Id.*  The court explained, *"[w]hen a harmless error in a patent is not subject to reasonable*

***debate, it can be corrected by the court***, as for other legal documents." *Id.*  Applying this standard, the court found the trial court's refusal to correct the patent was reversible error, and held the patent "was improperly invalidated." *Id.*

Similarly, in *Fiber Systems International, Inc. v. Applied Optical Systems, Inc.*, 2009 WL 3571350 (E.D. Tex. Oct. 26, 2009), the Eastern District of Texas relied on *Hoffer* to reject an invalidity defense.  The defendant (Applied Optical) contended that, due to an error in the patent-in-suit's claim of priority to a provisional application, the patent was invalid in light of prior art. *Id.* at *2.  The plaintiff (Fiber Systems) disagreed, arguing that the patent "should not be invalidated because of a simple typographical error," as "[d]istrict courts are empowered to correct harmless typographical errors." *Id.*

The court with Fiber Systems agreed and corrected the error. *Id.*  The court found that, because the "documents submitted to the USPTO contained th[e] correct provisional application number," and "it [was] apparent that [Fiber Systems] intended to claim priority to the [correct application]," the "court [would] treat the [ ] patent as properly claiming priority" to the correct provisional application. *Id.*

Many other cases are in accord. *See, e.g., CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358–60 (Fed. Cir. 2011) (reversing a district court's grant of summary judgment where the district court should have exercised its authority to correct typographic errors in a patent's claims); *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1203 & n.3 (Fed. Cir. 1992) (similar); *TracBeam, L.L.C. v. AT&T, Inc.*, 2013 WL 250532, at *18–19 (E.D. Tex. Jan. 23, 2013) (denying summary judgment because the court had authority to correct by claim construction a printing error that was evident from the prosecution history); *DR Sys., Inc. v. Fujifilm Medical Sys. USA, Inc.* 2007 WL

4259164 (S.D. Cal. Dec. 3, 2007) ("[W]hen there are minor, unintentional errors apparent from the intrinsic record and the correction is not inconsistent with the prosecution history, then district courts have authorit to make the correction."); Robert A. Matthews, *Annotated Patent Digest* § 6:7 ("Where the printed version of a patent contains errors in the claims and those errors are evident from [ ] the prosecution history, . . . the version of the claims in the file history controls, even if no certificate of correction was obtained.").

 2.    **The Court should correct the omissions from the '045 and '690 patents.**

In this case, like in *Hoffer* and *Fiber Systems*, (1) the errors in the '045 and '690 patents were administrative in nature; (2) the errors were easily identifiable; (3) and the priority information for the '045 and '690 patents is not subject to debate.

*First*, the '045 and '690 patents lack complete priority information only as a result of administrative oversight. During the prosecution of the '045 patent, the patentees claimed priority to provisional application number 60/020,296 in the data sheet and other filings. The PTO acknowledged Worlds' entitlement to a November 13, 1995 effective filing date by identifying the accurate priority information on its public PAIR website. *See* Part I.B. Similarly, during the prosecution of the '690 patent, the patentees referenced provisional application number 60/020,296 in data sheets and a Petition to Make Special, filed March 24, 2003. *See id.*

*Second*, the omissions in the '045 and '690 patents are easily identifiable to any observer. Indeed, one need only look at the other asserted patents to learn that the '045 and '690 patents were meant to refer to the November 1995 provisional application. The '045 and '690 patents were the first two patents in a chain of continuation patents, and they are the only two that lack complete priority information. Each subsequent

continuation patent — including four of the five patents-in-suit — references the 1995 provisional application and, in so doing, highlights the omissions in the '045 and '690 patents.  As stated above, the file histories are unequivocal.  The accurate priority information is so evident, in fact, that the PTO itself recognizes the November 13, 1995 effective filing date for the '045 patent on its own PAIR database. *See* Ex. 11.

Third, the correct effective filing date for the '045 and '690 patents is not subject to debate.  Indeed, for purposes of Defendants' motion it is undisputed that (1) the 1995 provisional application discloses the inventions claimed by the '045 and '690 patents, (2) the 1995 provisional application includes the same inventors as the '045 and '690 patents, and (3) Worlds' 1996 application was filed within one year of the 1995 provisional application.  Thus, in correcting the omissions from the '045 and '690 patents, the Court would not have to resolve any factual disputes.[7]

To be clear, Defendants do not dispute *any* of this analysis.  They do not claim the Court is powerless to correct the references in the '045 and '690 patents.  They do not dispute that, but for the PTO's errors, November 13, 1995 is the proper effective filing date.  They do not contend that Worlds made any error, or that the errors in the '045 and '690 patents were anything other than administrative.  They do not suggest that they were deceived or otherwise unaware of the true priority dates of Worlds' patents.  Indeed, Defendants do not even hint that they have been harmed in any way by the omissions.

---

[7]        Defendants' only case that bears on this issue, *Simmons, Inc. v. Bombardier, Inc.*, 328 F. Supp. 2d 1188 (D. Utah 2001), is nonbinding and unpersuasive.  In *Simmons*, the plaintiff (Simmons) asked the court to correct the priority date listed on the asserted patent (the '594 patent). *Id.* at 1199.  Simmons argued that the '594 patent was entitled to a December 9, 1992 priority date, but nothing in the intrinsic evidence confirmed that Simmons was correct.  *See id.* at 1197–98.  Among other reasons, *Simmons* is distinguishable because the Court could not easily determine from the prosecution history how the patent should be corrected, if at all.  *Id.* at 1202.  Moreover, in *Pfizer Inc. v. Teva Pharmaceuticals*, 882 F. Supp. 2d 643, 698 (D. Del. 2012), the court explained that *Simmons* addressed "whether a district court can correct mistakes in a patent that are '*subject to reasonable debate*.'"  Here, there is no debate.

Defendants' only argument is that, under a superseded regulation, Worlds' patents should be invalidated based on a harmless technicality. The Court should use its power to avoid such an unjust result. *Cf. Biotec Biologische v. Biocorp*, 249 F.3d 1341, 1348 (Fed. Cir. 2001) ("An error in the prosecution record must be viewed as are errors in documents in general; that is, would it have been apparent to the interested reader that an error was made, such that it would be unfair to enforce the error. The defendants do not argue that this statement led them to believe that it clearly limited the invention that was claimed.").

**C.      Summary judgment would be improper given Worlds' pending requests for Certificates of Correction for the '045 and '690 patents.**

On July 5, 2013, Worlds requested that the PTO issue Certificates of Correction to correct the '045 and '690 patents to add specific references to the November 13, 1995 provisional application in the specifications and title pages. Worlds' requests for Certificates of Correction will likely be granted. If a patent is issued and contains a mistake, regardless of whose fault the mistake is, it may be corrected by petitioning the PTO for a Certificate of Correction. 35 U.S.C. §§ 254 (when mistake is fault of the PTO), 255 (when mistake is not fault of the PTO); *see also Adrain*, 2001 WL 740542, at *3 (a patentee "may use the certificate of correction process to correct his or her failure to make reference to prior patent applications").

Here, the prosecution histories leave no doubt that Worlds sought and was entitled to an effective filing date of November 13, 1995 for the '045 and '690 patents. Indeed, by putting the continuity data in the data sheets and declarations for the '045 and '690 patents, Worlds expected that the PTO would capture that information and include appropriate priority information in the issued patents. Even the PTO has recognized the correct November 13, 1995 effective filing date on its public PAIR website.

Once the Certificates of Correction for the '045 and '690 patents are issued, Defendants' motion for summary judgment will be moot. *See Inland Paperboard & Packaging, Inc. v. Sihl GmbH*, 2005 WL 1528240, at *1 (S.D. Ind. June 21, 2005) (denying summary judgment because defendant's "argument for invalidity would be moot" if the PTO were to grant certificates of correction). Under well-established law, a certificate of correction applies prospectively to all future acts of infringement. *See DuPont*, 525 F.3d at 1362. Indeed, as the Federal Circuit has held, "each act of infringement gives rise to a separate cause of action." *Id.*

So even if Defendants' motion had any merit — it does not — Defendants would still be liable for the new and continuing acts of infringement that they commit every day. The Court should deny Defendants' motion on this basis alone. *See Pfizer, Inc. v. Teva Pharmaceuticals*, 882 F. Supp. 2d 643, 699 (D. Del. 2012) ("[B]ecause defendants' [ ] products will prospectively infringe the patents-in-suit, . . . Pfizer's Certificate of Correction appropriately applies to this action.").

## V.   Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment on Invalidity should be denied.

Dated: July 9, 2013                     Respectfully submitted,

                                        **Worlds, Inc.**
                                        By its attorneys,

                                        By: _____*Ryan V. Caughey*_____
                                        Max L. Tribble (admitted *pro hac vice*)
                                        mtribble@susmangodfrey.com
                                        Brian D. Melton (admitted *pro hac vice*)
                                        bmelton@susmangodfrey.com
                                        Chanler Langham (*pro hac vice* pending)
                                        clangham@susmangodfrey.com
                                        Ryan Caughey (admitted *pro hac vice*)
                                        rcaughey@susmangodfrey.com
                                        SUSMAN GODFREY L.L.P.
                                        1000 Louisiana Street, Suite 5100
                                        Houston, Texas 77002
                                        Telephone: (713) 651-9366
                                        Facsimile:  (713) 654-6666

                                        Joel R. Leeman (BBO # 292070)
                                        jleeman@sunsteinlaw.com
                                        Meredith L. Ainbinder (BBO # 661132)
                                        mainbinder@sunsteinlaw.com
                                        SUNSTEIN KANN MURPHY & TIMBERS LLP
                                        125 Summer Street
                                        Boston, MA 02110-1618
                                        Telephone: (617) 443-9292
                                        Facsimile:  (617) 443-0004


                                        *Attorneys for Plaintiff Worlds, Inc.*

**Certificate of Service**

I certify that on the above date, this document was filed through the ECF system and thereupon sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Ryan V. Caughey
Ryan V. Caughey