UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WORLDS, INC., <br><br> Plaintiff <br><br> v. <br><br> ACTIVISION BLIZZARD, INC., <br> BLIZZARD ENTERTAINMENT, INC. and <br> ACTIVISION PUBLISHING, INC., <br><br> Defendants. | Civil Action No. 12-10576-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                   **March 13, 2014**

### I. Introduction

In this patent dispute, Plaintiff Worlds, Inc., ("Worlds") alleges that Activision Blizzard, Inc., Blizzard Entertainment, Inc. and Activision Publishing, Inc. (collectively, "Defendants") infringe United States Patents Nos. 7,181,690 ("'690"), 7,493,558 ("'558"), 7,945,856 ("'856"), 8,082,501 ("'501") and 8,145,998 ("'998") (collectively, the "Patents-In-Suit"). The Defendants have filed a motion for summary judgment seeking a ruling that all of the asserted claims in the Patents-In-Suit are invalid. D. 83. For the following reasons, the Court ALLOWS the Defendants' motion.

### II. Factual Background

#### A. Patents-in-Suit

This lawsuit involves patents that teach an invention enabling large numbers of computer users to interact over a client-server network in a "virtual world" displayed on a computer screen. D. 62-2, 62-3, 62-4, 62-5, 62-6. Plaintiff Worlds alleges that the Defendants infringe the

following patent claims:  '690 claims 1-20; '558 claims 4-9; '856 claim 1; '501 claims 1-8, 10, 12, 14-16; '998 claims 1-3, 7, 8, 11-20.[1]  ¶ 1.  Worlds asserts that the Patents-In-Suit are entitled to an effective filing date of November 13, 1995, which is the filing date of U.S. Provisional Application No. 60/020,296 ("the Provisional Application").  ¶ 2.  All of the Patents-in-Suit reference U.S. Patent No. 6,219,045 ("the '045 patent").  ¶¶ 7, 13, 16, 19, 22.  The '045 patent was filed on November 12, 1996 and issued on April 17, 2001.  ¶ 8.  The '045 patent does not claim priority to any earlier filed application and does not contain any reference to the Provisional Application.  ¶¶ 9-11.  The '045 patent is not asserted in this action.  ¶ 7.

The '690 patent was filed on August 3, 2000 and issued on February 20, 2007.  ¶ 3.  The '690 patent does not contain any reference to the Provisional Application.  ¶ 6.  The '690 patent states that it is a "[c]ontinuation of application No. 08/747,420, filed on Nov. 12, 1996, now Pat. No. 6,219,045," i.e., the '045 patent not asserted in this action.  ¶ 7.

The '558 patent was filed on November 2, 2006 and issued on February 17, 2009.  ¶ 12. The '558 patent states that it is a "[c]ontinuation of application No. 09/632,154, filed on Aug. 3, 2000, now Pat. No. 7,181,690, which is a continuation of application No. 08/747,420, filed on Nov. 12, 1996, now Pat. No. 6,219,045."  ¶ 13.  Unlike the '045 or '690 patents, the first sentence of the specification of the '558 patent states:  "This application . . . claims priority from provisional application No. 60/020,296, filed Nov. 13, 1995."  ¶ 14.

---

[1] Unless otherwise noted, all references are to the Defendants' statement of facts, D. 85. "Worlds does not dispute the facts set forth in Defendants' Statement of Undisputed Material Facts." Pl. Opp., D. 89 at 8 n.2.  Worlds asserts additional facts in its opposition to summary judgment.  D. 89 at 8-13.  Many of these facts recite public documents found in the prosecution histories of the '045 and '690 patents and the authenticity of these documents are not contested. To the extent that Worlds introduces new facts beyond these public documents, the Court finds no genuine dispute of material fact that prevents an award of summary judgment as a matter of law.

..

The '856 patent was filed on January 13, 2009 and issued on May 17, 2011. ¶ 15. The '856 patent states that it is a "[c]ontinuation of application No. 11/591,878, filed on Nov. 2, 2006, now Pat. No. 7,493,558, which is a continuation of application No. 09/632,154, filed on Aug. 3, 2000, now Pat. No. 7,181,690, which is a continuation of application No. 08/747,420, filed on Nov. 12, 1996, now Pat. No. 6,219,045." ¶ 16. The first sentence of the specification of the '856 patent states: "This application . . . claims priority from U.S. provisional patent application No. 60/020,296, filed Nov. 13, 1995." ¶ 17.

The '501 patent was filed on March 19, 2009 and issued on December 20, 2011. ¶ 18. The '501 patent states that it is a "[c]ontinuation of application No. 12/353,218, filed on Jan. 13, 2009, now Pat. No. 7,945,856, which is a continuation of application No. 11/591,878, filed on Nov. 2, 2006, now Pat. No. 7,493,558, which is a continuation of application No. 09/632,154, filed on Aug. 3, 2000, now Pat. No. 7,181,690, which is a continuation of application No. 08/747,420, filed on Nov. 12, 1996, now Pat. No. 6,219,045." ¶ 19. The first sentence of the specification of the '501 patent states: "This application . . . claims priority from U.S. Provisional patent application Ser. No. 60/020,296, filed Nov. 13, 1995." ¶ 20.

The '998 patent was filed on March 19, 2009 and issued on March 27, 2012. ¶ 21. The '998 patent states that it is a "[c]ontinuation of application No. 12/353,218, filed on Jan. 13, 2009, which is a continuation of application No. 11/591,878, filed on Nov. 2, 2006, now Pat. No. 7,493,558, which is a continuation of application No. 09/632,154, filed on Aug. 3, 2000, now Pat. No. 7,181,690, which is a continuation of application No. 08/747,420, filed on Nov. 12, 1996, now Pat. No. 6,219,045." ¶ 22. The first sentence of the specification of the '998 patent states: "This application . . . claims priority from U.S. Provisional Patent Application Ser. No. 60/020,296, filed Nov. 13, 1995." ¶ 23.

To illustrate the relation of these patents, the Court reproduces here a graphic found in the Defendants' memorandum supporting summary judgment, D. 84 at 5:



Although Worlds does not dispute these facts, D. 89 at 8 n.2, Worlds cites three examples where the Provisional Application is mentioned in documents that are part of the '045 patent's prosecution history: (1) an application transmittal letter, D. 89-10 at 4; (2) the inventors' declarations, D. 89-10 at 42-47; and (3) a request for corrected filing receipt, D. 89-10 at 48. The application transmittal letter and the inventors' declarations were filed in 1996 and cite the correct Provisional Application serial number but incorrectly list the Provisional Application's filing date as June 24, 1996. D. 89-10 at 4, 42-52. The request for a corrected filing receipt was filed on August 18, 2000 and identifies the correct serial number and filing date for the Provisional Application. Id.[2]

---

[2] Worlds also cites several documents in the prosecution history of the '690 patent that mention the Provisional Application. D. 89 at 11-12.

Worlds further submits a screen-shot of a public website operated by the United States Patent and Trademark Office ("USPTO") indicating that according to the website the '045 patent claims priority to the Provisional Application. D. 89 at 11. Worlds also states that on July 5, 2013, it requested that the USPTO issue certificates of correction "to include references to the 1995 provisional application on the front pages of the '045 and '690 patents and at the beginning of their specifications." D. 89 at 12-13. The USPTO granted these requests on September 24, 2013. D. 107 at 1.

**B.    Invention Reduced to Practice**

In 1995, Worlds created two software products called Worlds Chat and AlphaWorld. Worlds Chat was first demonstrated and publically released in April 1995. ¶¶ 31-32. Worlds Chat embodied all of the asserted claims of the Patents-in-Suit at least as early as April 1995. ¶ 37. AlphaWorld was first demonstrated in June 1995 and was released on approximately June 29, 1995. ¶¶ 24-25. At least as of September 1995, AlphaWorld practiced all of the asserted claims of the Patents-In-Suit and subsequent versions of AlphaWorld also practiced the asserted claims. ¶ 27. Thus, AlphaWorld and Worlds Chat practiced all of the asserted claims of the Patents-In-Suit and were in public use more than one year before November 12, 1996, which is the filing date of the '045 patent. ¶¶ 33-34; see also D. 89 at 8.

**III.    Standard of Review**

The Court will grant a moving party's motion for summary judgment when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party," Vélez–Rivera v. Agosto–Alicea, 437 F.3d 145, 150 (1st Cir. 2006) (quoting United States v. One Parcel of Real

5

Prop., 960 F.2d 200, 204 (1st Cir. 1992)) (internal quotation marks omitted), and a fact is material if it is "one that might affect the outcome of the suit under the governing law." Id. (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)) (internal quotation marks omitted). In resolving a motion for summary judgment, the Court scrutinizes the record in the light most favorable to the summary judgment opponent and draw all reasonable inferences in that party's favor. Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005).

## IV. Analysis

### A. Statutory and Regulatory Background

Patents are entitled to a presumption of validity. 35 U.S.C. § 282(a). To overcome that presumption, a party must demonstrate by clear and convincing evidence that the patent is invalid. State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir. 2003). With certain exceptions (namely for disclosures made one year or less before the effective filing date of the claimed invention under 35 U.S.C. §§ 102 (b)), "[a] person shall be entitled to a patent unless—(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention; . . . ." 35 U.S.C. §§ 102 (a)(1). That is, the filing date of the patent normally becomes the "priority date" and the date twelve months prior is the invention's "critical date." Eakin Enters., Inc. v. Specialty Sales LLC, No. 1:11-cv-02008-LJO-SKO, 2012 WL 2445154, at *5 (E.D. Cal. June 26, 2012). Accordingly, "[i]f any "public use or . . . sale" occurred before the critical date, the patent is invalid." Id.

A patent's effective filing date, the "priority date," is usually the date on which the patent application is filed with the USPTO, unless the patentee claims the benefit of an earlier-filed application. See, e.g., Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319, 1331-32 (Fed.

Cir. 2009). "Determination of a priority date is purely a question of law if the facts underlying that determination are undisputed." Bradford Co. v. Conteyor N. Am., Inc., 603 F.3d 1262, 1268 (Fed. Cir. 2010) (citation omitted).

35 U.S.C. § 119 describes when a patent application may benefit from the earlier filing date of a provisional application. For patent claims filed prior to November 29, 2000 including the '045 patent, the statute provides that:

> An application for patent . . . for an invention disclosed . . . in a provisional application . . . shall have the same effect, as to such invention, as though filed on the date of the provisional application . . . if the application for patent . . . is filed not later than 12 months after the date on which the provisional application was filed and . . . contains or is amended to contain a specific reference to the provisional application.

35 U.S.C. § 119(e)(1) (1994).[3]

### B. The '045 Patent May Not Claim Priority to the Provisional Application

The Code of Federal Regulations defines more precisely how this "specific reference" must be made. 37 C.F.R. § 1.78(a). The parties dispute which version of 37 C.F.R. § 1.78 should govern here to determine if Worlds may claim an earlier priority date by reference to a provisional application. See Def. Mem., D. 84 at 17 (stating that the regulation effective in 1996 should apply); Pl. Opp., D. 89 at 14 (arguing that the November 29, 2000 version of the statute should apply). The Federal Register indicates, however, that "the changes to . . . Rule 1.78 . . . apply to any patent application filed on or after November 29, 2000." 65 F.R. 57024. It is

---

[3] The Court focuses here on the statutes and regulations affecting whether the '045 patent could claim priority to the Provisional Application. The '045 patent was filed within twelve months after the date of the Provisional Application. Compare D. 89-3 at 2 (provisional application filed on Nov. 13, 1995) with D. 89-4 at 2 ('045 patent filed on Nov. 12, 1996). By contrast, the '690 patent was filed more than 12 months after the date of the Provisional Application, and so any benefit to the '690 patent would be outside the scope of § 119(e). See D. 62-2 at 2 ('690 patent filed on Aug. 3, 2000). The '690 patent as a continuation of the earlier '045 patent relies on the '045 patent's effective filing date for its own priority. See 35 U.S.C. § 120.

undisputed that the applications for both of the patents-in-suit were filed before this date. See D. 62 Exh. 2 at 2 ('690 patent filed on Aug. 3, 2000); D. 89 Exh. 4 at 2 ('045 patent filed on Nov. 12, 1996).

The 1996 version of the regulation requires reference to a "prior provisional application" "in the first sentence of the specification following the title." 37 C.F.R. § 1.78(a)(4) (1996). There is no dispute that neither the '690 patent nor the '045 patent reference the provisional application in the first sentence following the title. Accordingly, neither patent can claim priority to the provisional application.

Even if the 2000 version of the regulation did apply, the Patents-In-Suit could not claim priority to the provisional application. The November 29, 2000 version of the regulation states that:

> Any nonprovisional application claiming the benefit of one or more prior filed copending provisional applications must contain a reference to each such prior provisional application, identifying it as a provisional application, and including the provisional application number (consisting of series code and serial number). Unless the reference required by this paragraph is included in an application data sheet (§ 1.76), the specification must contain or be amended to contain such reference in the first sentence following any title.

37 C.F.R. § 1.78(a) (2000). Thus, according to that regulation, any reference to the Provisional Application must be either in "the specification . . . in the first sentence following any title" or in an "application data sheet." See E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, LLC, 525 F.3d 1353, 1360-61 (Fed. Cir. 2008) (stating that "35 U.S.C. § 119(e)(1) requires, for a claim of priority, that the non-provisional application contain 'a specific reference to the provisional application.' Under MPEP [the Manual of Patent Examining Procedure] § 201.11, the specific reference can be either in the first sentence of the specification or in the application data sheet"). An "application data sheet" ("ADS") is a specific document that was

defined for the first time by 37 C.F.R. § 1.76 on September 8, 2000. See 65 F.R. 54604-01 (September 8, 2000) (describing the creation of "[a] new [section] 1.76 . . . added to provide for the voluntary inclusion of an application data sheet in provisional and nonprovisional applications" and describing the ADS as a sheet "containing bibliographic data, which is arranged in a format specified by the [USPTO]"). The PTO's specifications for an ADS require that "[t]he top of a Patent Application Data Sheet should begin with the heading: 'Application Data Sheet.'" PTO Patent Application Data Sheet Format, D. 93-9 at 5 (emphasis in original). Accordingly, an ADS must be "clearly labeled" as such. Id. at 6.

As discussed above, the '045 patent contains no reference to the Provisional Application in "the specification . . . in the first sentence following any title." See 37 C.F.R. § 1.78(a). Defendants contend that no application data sheet exists in the prosecution history of the '045 patent. See D. 91 at 10-11. As noted above, the "ADS" regulation had not been promulgated when the application for what became the '045 patent was filed on November 12, 1996.[4] Cf. 65 F.R. 54604-01 (describing the "new § 1.76" effective as of September 8, 2000). Defendants argue that Worlds did not later add an ADS to the application before the patent issued on April 17, 2001. D. 91 at 10-11.

Worlds asserts that it referenced the Provisional Application in "data sheets" filed during prosecution of the '045 patent and that Worlds is entitled to the November 13, 1995 priority date. Id. Although Worlds in its brief and again at oral argument referred to documents in the prosecution history as "data sheets," this characterization appears to be descriptive of a variety of documents, including application transmittals, inventor declarations, requests for corrected filing receipts, bib data sheets, amendments and petitions to make special. To that end, Worlds

---

[4] The same observation is true as to the '690 patent filed on August 3, 2000.

identifies references to the Provisional Application in an application transmittal letter, the inventors' declarations and in a request for a correct filing receipt dated almost four years after the '045 patent's application had been filed. D. 89-10 at 4, 42-48. The references in the application transmittal form and inventors' declarations do not list the correct filing date of the Provisional Application.[5] Id. However, none of the documents that Worlds identifies are "clearly labeled" "Application Data Sheet." See D. 89-10 at 4 (referencing Provisional Application, but not clearly labeled "Application Data Sheet"); id. at 42-48 (same); id. at 50 (same). Furthermore, the PTO requires that an ADS "may not contain any other application data (i.e., abstract, amendments, transmittal letter, etc.)." D. 93-9 at 6. Indeed, some of the documents that Worlds identifies do not comply with this requirement either. D. 89-10 at 42-47 (including inventor declaration).

Because the '045 patent application does not reference the Provisional Application in either of the two locations specified by the regulation, the Defendants argue that Worlds has not satisfied the regulation and is therefore is not entitled to claim an earlier priority date as to the '045 patent (and by the priority chain of continuation applications, as to the other Patents-In-Suit). D. 84 at 18-20; D. 91 at 9-13.[6]

---

[5] In addition, Worlds argues that a screen-shot of the USPTO's public website/database (also known as "PAIR") indicates that the '045 patent claims priority to the Provisional Application. D. 89 at 11. That assertion, however, is not relevant where the proper inquiry focuses on the steps required by federal statute and regulation and whether Worlds's actions entitle it to a priority date that is not otherwise apparent on the face of the '045 patent. Moreover, the PAIR database's entry for the '690 patent does not reference the provisional application. D. 93-17 at 2.

[6] The Court is in receipt of Defendants' Notice of Supplemental Authority, D. 115, which addresses Medtronic CoreValve, LLC v. Edwards Lifesciences Corp., 741 F.3d 1359, 1366 (Fed. Cir. 2014). In this case, the Federal Circuit further cemented its interpretation of the "specific reference" requirement, noting that "[a]llocating the responsibility of disclosure through specific references to the patentee eliminates the inefficiencies associated with having

Worlds counters that these errors are "harmless scriveners' errors." D. 89 at 6. However, other courts confronted with similar facts have held that stray mentions of a provisional application within documents that are part of a patent's prosecution history do not overcome non-compliance with federal statute and regulation.[7] For example, in Carotek, Inc. v. Kobayashi Ventures, LLC, 875 F. Supp. 2d 313, 334 (S.D.N.Y. 2012), the plaintiff's patent application included inventors' declarations that referenced an earlier application. The Court held that "[t]hese declarations, however, do not satisfy the "specific reference" requirement. . . . The language of the regulation is unequivocal: to claim the benefit of an earlier patent, "the specification must contain or be amended to contain such reference in the first sentence(s) following the title," id. (citing 37 C.F.R. § 1.78), or, as is true under the 2000 version of the regulation, be referenced in the ADS. In Eakin Enters., Inc., 2012 WL 2445154, at *5, the plaintiff's patent application referenced an earlier provisional application and listed the correct provisional patent date but made a typographical error in the serial number of the provisional application. The patent "issued without reference to the provisional application." Id. The Court found that "because of this error, the . . . Patent does not permit [the Plaintiff] to take advantage of the provisional application's priority date." Id.[8]

---

the public expend efforts to unearth information when such information is readily available to the patentee." Id. (citation omitted).

[7] The MPEP also recognizes that strict compliance with the CFR is necessary to claim priority to a prior application. See MPEP § 201.11.

[8] Worlds cites E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, LLC, 525 F.3d 1353 (Fed. Cir. 2008) as a case where "based on the undisputed facts contained in the prosecution history, the non-provisional application was entitled to the filing date of the provisional application as a matter of law [and that] [a] reasonable person reading the language in the [application data sheet] would have concluded that the applicant was claiming priority to an earlier provisional application." D. 89 at 18 (quoting E.I. du Pont de Nemours & Co., 525 F.3d at 1361, 1363). That case is distinguishable where the patent application in that case (filed in 2002) contained an ADS and where "it [was] undisputed that the ADS contained a reference to the provisional application." Id. at 1361.

11

These cases are in line with the public policy requiring a patentee's reasonable compliance with patent regulations. A patent grants the powerful "right to exclude others from making, using, offering for sale, or selling the invention throughout the United States." Edwards Lifesciences AG v. CoreValue, Inc., 699 F.3d 1305, 1314 (Fed. Cir. 2012) (quoting 35 U.S.C. § 154). Determining whether one is actually excluded from making an invention is supposed to be a relatively straightforward process; the public should not be obliged to hunt through hundreds of documents in a lengthy prosecution history to find a patent's priority date. See Kelly C. McKinney, The Patent Reform Act of 2007 and International Patent Law Harmonization, 31 Hous. J. Int'l L. 125, 141 (2008) (advocating for priority rule that will enhance legal certainty in the patent system). "The purpose of the 'specific reference' requirement is clearly to ensure that someone examining a patent claiming the benefit of one earlier filed is readily able to assess the patent's priority date." Carotek, Inc., 875 F. Supp. 2d at 335. This requirement is more than a mere technicality:

> Although [the "specific reference" requirement] might appear to be a technical provision, it embodies an important public policy. The information required to be disclosed is information that would enable a person searching the records of the Patent Office to determine with a minimum of effort the exact filing date upon which a patent applicant is relying to support the validity of his application or the validity of a patent issued on the basis of one of a series of applications. In cases such as this, in which two or more applications have been filed and the validity of a patent rests upon the filing date of an application other than that upon which the patent was issued, a person, even if he had conducted a search of the Patent Office records, could unwittingly subject himself to exactly this type of infringement suit unless the later application adequately put him on notice that the applicant was relying upon a filing date different from that stated in the later application. As the court said in Sticker Industrial Supply Corp. v. Blaw-Knox Co., [405 F.2d 90, 93 (7th Cir. 1968):
>
> "Congress may well have thought that [this requirement] was necessary to eliminate the burden on the public to engage in long and expensive search of previous applications in order to determine the filing date of a later patent. . . . The inventor is the person best suited to understand the relation of his applications, and it is no hardship to require him to disclose this information."

Sampson v. Ampex Corp., 463 F.2d 1042, 1045 (2d Cir. 1972) (internal citation omitted).  This is not a case falling into one of the potential equitable exceptions that some Courts have applied when considering defects in disclosure of a patent's priority date.  Cf. Carotek, Inc., 875 F. Supp. 2d at 335 (finding that a correct reference to a prior application on a published patent's cover page provided sufficient notice); Broadcast Innovation, L.L.C., 420 F.3d at 1368 (finding that a later patent's correct reference to a prior U.S. patent entitled the later patent to claim priority to the prior patent's international application filing date in accordance with federal statute).  The references here (i.e., an application transmittal form, inventors' declarations and a request for a corrected filing receipt) are not the types of references that other courts, in some limited instances, have relied upon to allow claim to an earlier priority date.

### C. The '690, '558, '856, '501 and '998 Patents, as Continuations in a Chain from the '045 Patent, Cannot Claim a Priority Date Earlier Than the '045 Patent's Filing Date

In this case, Worlds attempts to assert claims defined in the '690 patent, which is a continuation of the '045 patent and makes no reference to the Provisional Application.  Worlds also attempts to assert claims defined in the '558 patent (a continuation of the '690 patent), the '856 patent (a continuation of the '558 patent) and the '501 and '998 patents (both continuations of the '856 patent).  All of the '558, '856, '501 and '998 patents purport to claim benefit from the Provisional Application.  None of these patents were filed "within 12 months after the date on which the provisional application was filed" and thus cannot claim the Provisional Application's priority date under 35 U.S.C. § 119(e).  Instead, any entitlement to priority would arise from a "priority chain" of applications pursuant to 35 U.S.C. § 120.  Encyclopaedia Britannica, Inc. v. Alpine Elec. of America, Inc., 609 F.3d 1345, 1351 (Fed. Cir. 2010) (quoting 35 U.S.C. § 120). That statute allows an application for a patent "to have the same effect, as to such invention, as

13

though filed on the date of the prior application." 35 U.S.C. § 120. As the Federal Circuit has ruled, "35 U.S.C. § 120 requires an intermediate application in a priority chain to 'contain a specific reference to the earlier filed application.'" Encyclopaedia Britannica, Inc., 609 F.3d at 1349 (affirming that "each application in a series of continuing applications must contain a specific reference to the original application").

Here, because neither the '045 nor the '690 patents reference the Provisional Application, none of the asserted Patents-in-Suit, i.e., the '690, '558, '856, '501 and '998 patents, are entitled to claim the November 13, 1995 filing date of the Provisional Application. See id. at 1350-51 (stating that "[t]here is nothing in the language or legislative history of § 120 to suggest that an application is entitled to an earlier priority date even if it fails to make a specific reference to an earlier application. . . . Later applications cannot amend [an earlier] application and restore its entitlement to priority. . . . Britannica's claim that a later application can cure this defect and restore the priority chain cannot be correct").

### D. The Court Cannot "Correct" the Issued Patents

Worlds argues that this Court should use its power to "correct" the '045 and '690 patents.[9] D. 89 at 7, 20-24. "Absent evidence of culpability or intent to deceive by delaying formal correction, a patent should not be invalidated based on an obvious administrative error." Hoffer v. Microsoft Corp., 405 F.3d 1326, 1331 (Fed. Cir. 2005). "When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court . . . ." Id. (directing the district court to correct a typographic error made by the USPTO that was "apparent from the face of the patent"). Cf. Group One, Ltd. v. Hallmark Cards, Inc., 407 F.3d 1297, 1303 (Fed.

---

[9] The Defendants contend that this Court is limited in its power to correct the '045 patent where the '045 patent is not a patent in suit. D. 91 at 14-15. The Court need not reach that issue where given there is a "reasonable debate" as to whether the errors in the '045 and '690 patents are "harmless," Hoffer, 405 F.3d at 1331, the Court otherwise declines to correct the patents.

Cir. 2005) (contrasting Hoffer with a scenario where "[t]he error . . . is not evident on the face of the patent [and] one cannot discern what language is missing simply by reading the patent. The district court does not have authority to correct the patent in such circumstances"); TracBeam, L.L.C. v. AT&T, Inc., No. 6:11-cv-96, 2013 WL 250532, at *18-19 (E.D. Tex. Jan. 23, 2013) (noting that "district courts and the Patent Office have the authority to correct errors in patents, but the authority of district courts is more limited . . . because a district court's correction applies retroactively in the action before it, while a Patent Office correction only applies prospectively" (citing Novo Industries, L.P. v. Micro Molds Corp., 350 F.3d 1348, 1356 (Fed. Cir. 2003)). This is a high bar for Worlds to meet, as an inadvertent addition to a claim can sometimes prove uncorrectable. See Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 345 F.3d 1318, 1331 n.1 (Fed. Cir. 2003) (finding claim uncorrectable where PTO erroneously added "and" to a claim and error was not obvious); CA, Inc. v. Simple.com, Inc., 780 F. Supp. 2d 196, 277 (E.D.N.Y 2009) (noting that correctable errors "usually involve little more than typographical errors").

Worlds cites several cases where district courts have corrected typographical errors. D. 89 at 21. In these cases, the courts ruled that the errors were "apparent" or "obvious" on the face of a published patent. See, e.g., CBT Flint Partners, LLC v. Return Path, Inc., 654 F.3d 1353, 1358 (Fed. Cir. 2011) (adding the word "and" in a published claim to "correct[] an obvious error"); TracBeam, L.L.C., 2013 WL 250532, at *18-19 (correcting printing error); DR Sys, Inc. v. Fujifilm Med. Sys. USA, Inc., No. 06-cv-417-JLS, 2007 WL 4259164, at *2 (S.D. Cal. Dec. 3, 2007) (correcting an "obvious" error that "apparent on the face of the printed patent"); Fiber Systems Int'l, Inc. v. Applied Optical Sys., Inc., No. 2:06-cv-473, 2009 WL 3571350, at *2 (E.D. Tex. Oct. 26, 2009) (finding that a published patent's single-digit typographical error referencing a prior provisional application was "apparent" and harmless error); Lemelson v. Gen.

15

Mills, lnc., 968 F.2d 1202, 1203 &, n.3 (Fed. Cir. 1992) (finding inadvertent omission of a single word correctable). These cases are all distinguishable where, as is the case here, there is no reference in either the '045 and '690 patents to the Provisional Application. See Group One, 407 F.3d at 1303. Moreover, those patents' prosecution histories contained erroneous information, i.e., documents citing the Provisional Application but with an incorrect filing date. Here there is a "reasonable debate" as to whether the errors in the '045 and '690 patents are "harmless." Hoffer, 405 F.3d at 1331. Unlike Hoffer, it is not clear that what has occurred here is an "obvious administrative error" and as discussed below, the USPTO has refused to issue certificates of correction for lesser errors. Finally, Worlds has cited no case in which a court corrected a patent that inadvertently excluded a missing reference. Accordingly, the Court finds that a missing reference to the Provisional Application is not apparent from the face of the patent.

Finding otherwise would be inconsistent with the policy concerns discussed above. Were the Court to find that the inadvertent omission of a reference to a Provisional Application was correctable, by extension, this could support an argument that the inadvertent omission of reference to prior art should also be correctable. As a practical matter, this would increase the quantum of proof for all defendants in patent litigation seeking to assert an invalidity defense, because findings of invalidity against references disclosed to the PTO are inherently more difficult to demonstrate. See Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2251 (2011) (discussing the "commonsense principle" that "new evidence supporting an invalidity defense may carry more weight in an infringement action than evidence previously considered by the PTO" and collecting cases observing that "the presumption of validity is weakened or

dissipated" where evidence was "never considered by the PTO") (citation and internal quotation marks omitted).

### E. The Resolution of Worlds' Petitions to the USPTO for "Certificates of Correction" Does Not Moot the Defendants' Invalidity Argument

On July 5, 2013, four days before filings its opposition to the Defendants' motion for summary judgment, Worlds filed with the USPTO petitions for "Certificates of Correction" for the '045 and '690 patents to reference the Provisional Application. D. 89 at 7. Worlds argues that the Defendants' motion for summary judgment "will become moot when the PTO issues Certificates of Correction for the '045 and '690 patents." Id. Indeed, the PTO issued the certificate of correction on September 24, 2013. D. 107.

However, a certificate of correction applies only prospectively to future acts of infringement. DuPont, 525 F.3d at 1362 (citing Southwest Software, Inc. v. Harlequin Inc., 226 F.3d 1280, 1295 (Fed. Cir. 2000)); see also TracBeam, L.L.C., 2013 WL 250532, at *18 (citing Novo Industries, L.P., 350 F.3d at 1356). That is, given the USPTO has allowed Worlds' petitions for correction, Worlds could recover for any future infringement. Worlds cannot, however recover any damages for alleged infringement occurring prior to the date of the certificate of correction. Worlds cites Pfizer, Inc. v. Teva Pharm., 882 F. Supp. 2d 643 (D. Del. 2012), which is a case where a certificate of correction was issued in the midst of litigation. The court there held that "generally speaking, a certificate of correction applies only to actions filed after that certificate issued" but in the unique circumstances of an Abbreviated New Drug Application ("ANDA") case, i.e., where infringement is generally "hypothetical . . . prior to the filing of a complaint," that "a certificate of correction can be applied where the defendants' ANDA products will prospectively infringe the patents-in-suit." Id. at 699. Such unique

circumstances are not present here. Accordingly, Pfizer supports Activision's position that "a certificate of correction applies only to actions filed after that certificate issued." Id.[10]

### F. The Asserted Claims of the Patents-in-Suit Are Invalid

For all of the above reasons, the Patents-in-Suit are not entitled to claim priority to November 13, 1995, the filing date of the Provisional Application. Instead, the Patents-in-Suit may claim priority to November 12, 1996, the filing date of the '045 patent. As discussed above, AlphaWorld and Worlds Chat embodied all of the asserted claims of the Patents-in-Suit and were in public use at least a year before November 12, 1996. A patent is invalid as a matter of law if the invention claimed was in public use or available to the public more than one year before the effective filing date of the claimed invention. 35 U.S.C. §§ 102 (a) & (b). Because that is true here, the asserted claims of the Patents-in-Suit are invalid as a matter of law.

---

[10] In this case, Worlds alleges continued infringement through the lives of the Patents-In-Suit. D. 32. Indeed, nothing about the Court's order prevents Worlds from asserting infringement from the date of the certificate going forward. E.I. Du Pont De Nemours & Co. v. MacDermid Printing Solutions, L.L.C., 525 F.3d 1353, 1362 (Fed. Cir. 2008) (noting that "each act of infringement gives rise to a separate cause of action" and concluding that, while a certificate of correction will not apply if it issues after the "cause of action arose," it can apply to future infringing conduct). In light of the foregoing, the Court declines to enter judgment in Defendants' favor at this time. Instead, the Court ORDERS the parties to meet and confer to discuss whether the appropriate course of action is for the Court to dismiss the instant action (without preventing Worlds from commencing a new action alleging infringement from the date of the certificates going forward), or merely confine this decision to infringement allegedly occurring from the dates the patents issued through the lives of the Patents-In-Suit. The parties shall file a joint statement, not exceeding more than five (5) pages, outlining their respective positions with the Court no later than March 27, 2014.

**G.      Conclusion**

For all of the above reasons the Court ALLOWS the Defendants' motion for summary judgment, D. 83.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
