## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **WORLDS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 12-cv-10576-DJC** |
| **ACTIVISION BLIZZARD, INC.,** ) | |
| **BLIZZARD ENTERTAINMENT, INC. and** ) | |
| **ACTIVISION PUBLISHING, INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **March 18, 2022**

### I.      Introduction

Plaintiff Worlds, Inc. ("Worlds") filed this lawsuit alleging that Defendants Activision

Blizzard, Inc., Blizzard Entertainment, Inc. and Activision Publishing, Inc. (collectively,

"Activision") infringed certain of Worlds's patents.  D. 1, 32.  Following this Court's grant of

judgment for Activision, D. 359, Activision now moves for attorneys' fees under 35 U.S.C. § 285.

D. 367.  Worlds moves for disallowance of Activision's amended bill of costs.  D. 381.  For the

following reasons, the Court DENIES Activision's motion for attorneys' fees, D. 367, and

DENIES in part and ALLOWS in part Worlds's motion for disallowance, D. 381.

### II.      Standard of Review

#### A.      Attorneys' Fees

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable

attorneys' fee from the loser."  Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247

(1975).  Under 35 U.S.C. § 285, however, the Court "in exceptional cases may award reasonable

attorney fees to the prevailing party." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 548 (2014) (quoting 35 U.S.C. § 285). An "exceptional" case is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. at 553–54 (defining "exceptional" to mean "uncommon," "rare" or "not ordinary" (citations omitted)). As to the latter consideration, "sanctionable conduct is not the appropriate benchmark" for determining whether an award of attorneys' fees under the statute is justified: "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." Id. at 555.

To determine whether a case is "exceptional," district courts "consider[] the totality of the circumstances," id. at 554, and "exercise broad discretion," Therasense, Inc. v. Becton, Dickinson & Co., 745 F.3d 513, 518 (Fed. Cir. 2014). The Court must assess the case as a whole, rather than focusing on discrete portions of the case, see Intell. Ventures I LLC v. Trend Micro Inc., 944 F.3d 1380, 1383 (Fed. Cir. 2019), taking into account "the conduct of the prevailing party that is seeking attorney's fees," Romag Fasteners Inv. v. Fossil Inc., 866 F.3d 1330, 1340 (Fed. Cir. 2017). The movant bears the burden to show exceptionality by clear and convincing evidence. Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1368 (Fed. Cir. 2007).

**B.**   **Bill of Costs**

"Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties." Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 565 (2012); see Fed. R. Civ. P. 54(d)(1) (stating that costs "should be allowed to the prevailing party" unless a statute, rule or court order provides otherwise). Courts may only award litigation expenses within those

categories of costs specified in 28 U.S.C. §§ 1821 and 1920.  Rimini St., Inc. v. Oracle USA, Inc.,

139 S. Ct. 873, 877 (2019).  It is the "practice" of this Court that prevailing parties must file their

bill of costs within fifteen days of "the earlier of (i) the expiration of the time allowed for appeal

of the final judgment or decree, or (ii) receipt by the Clerk of the Mandate of the Court of Appeals."

See United States District Court for the District of Massachusetts, Taxation of Costs, at 1, 7 n.6,

https://www.mad.uscourts.gov/resources/pdf/taxation.pdf (last visited Mar. 16, 2022).   While

courts have broad discretion to deny recovery of costs, such discretion "operates in the long

shadow of a background presumption favoring cost recovery for prevailing parties."  In re Two

Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956, 962 (1st Cir. 1993).

### III.    Factual and Procedural Background

Worlds commenced this action in March 2012, alleging that Activision's World of

Warcraft and Call of Duty videogame franchises infringe nearly sixty claims across five of

Worlds's patents, D. 1, and later amended its complaint, D. 32; see D. 34.  In March 2014, this

Court allowed Activision's first motion for summary judgment on the basis that all the then-

asserted claims of the patents-in-suit were invalid as a matter of law, since Worlds's own products,

which Worlds contended practiced the asserted claims, were in public use more than one year

before the effective filing date of the claimed invention.  D. 124 at 18.  Worlds's infringement

claims thereafter were limited to the date the United States Patent and Trademark Office issued

certificates of correction in September 2013 until the date the patents-in-suit expired.  See id. at

17–18.  In June 2015, following a Markman hearing, this Court concluded that certain claims were

invalid, this time for being indefinite under 35 U.S.C. § 112.  D. 153.

Activision filed a second motion for summary judgment in September 2015, arguing that

the then-asserted claims were invalid as a matter of law for failing to claim patent eligible subject

matter under 35 U.S.C. § 101, D. 174, in light of the Supreme Court's decision in Alice Pty. Ltd. vs. CLS Bank Int'l, 573 U.S. 208 (2014), which provided new guidance for assessing validity under § 101, see D. 175 at 15.  The Court heard the parties on the motion and took it under advisement.  D. 194.  Before the Court ruled on the summary judgment motion, the parties filed a joint stipulation and motion to stay the case because the United States Patent Trial and Appeal Board ("PTAB") had instituted inter partes review ("IPR") proceedings as to all the claims then asserted against Activision.  D. 197; D. 198.  The Court granted the stay in February 2016.  D. 201.

During the IPR proceedings, the PTAB found several of the instituted claims unpatentable. See D. 369-10 at 136–37; D. 369-11 at 135; D. 369-12 at 116; D. 369-13 at 64; D. 369-14 at 88; D. 369-15 at 71; see also D. 369-29 at 3.  Worlds appealed three of the PTAB's decisions.  See Worlds Inc. v. Bungie, Inc., 903 F.3d 1237, 1239 (Fed. Cir. 2018).  The Federal Circuit vacated the appealed decisions on the grounds that the PTAB failed adequately to address Worlds's argument that Activision should have been named a real party in interest to the IPR proceedings— initiated by petition of Bungie, Inc. ("Bungie"), an independent videogame developer and third party to this litigation—which would have rendered the petitions time barred.  Id. at 1244–48.  The Federal Circuit remanded the case without reaching the merits of the PTAB's decisions.  Id. at 1248.  On remand, the PTAB vacated its decisions to institute the IPR proceedings at issue. D. 369-16 at 3.

In April 2020, this Court held a status conference, D. 262, adopted a new scheduling order, D. 264, and denied Activision's still pending motion for summary judgment as moot, D. 263, in light of the parties' proposals to file supplemental summary judgment briefing, see D. 239 at 6; D. 256 at 3.  In May 2020, Worlds filed a narrowed election of asserted claims, D. 269, after which Activision filed a renewed motion for summary judgment that the asserted claims of the patents-

in-suit were invalid as a matter of law for failing to claim patent eligible subject matter under 35 U.S.C. § 101, D. 272.  This Court allowed the motion in April 2021, D. 358, and entered judgment for Activision, D. 359.

Activision now moves for attorneys' fees under 35 U.S.C. § 285, D. 367, and Worlds moves for disallowance of Activision's amended bill of costs, D. 381.

## IV.    Discussion

### A.    <u>Activision's Motion for Attorneys' Fees</u>

Activision has moved for attorney's fees for the period of April 2020 to present, that is, after the Court lifted the stay in this case.  D. 368-1 at 6; <u>see</u> D. 264.  Considering the totality of the circumstances, the Court concludes that Activision has not shown by clear and convincing evidence that this was an "exceptional" case warranting an award of attorney's fees to Activision as the prevailing party.  <u>See</u> <u>Octane Fitness</u>, 572 U.S. at 554; <u>Digeo</u>, 505 F.3d at 1368.

### 1.    *Substantive Strength of Litigation Position*

As to the substantive strength of Worlds's litigation position, Activision contends that Worlds pursued its infringement claims while knowing its patents were invalid as a matter of law under 35 U.S.C. § 101.  D. 368-1 at 13.  For support, Activision notes statements by Worlds reflecting the "risk" of a finding of invalidity as to the patents-in-suit.  <u>Id.</u>; <u>see</u> D. 369-6 at 3 ¶ 137. The acknowledgement of such potential risk, however, does not alone render Worlds's position objectively unreasonable, and Activision provides no additional facts to support that Worlds knew its patents were not drawn to patent-eligible subject matter under § 101.

Moreover, Activision's own litigation conduct does not indicate that its opponent's litigation position as to this issue was so weak as to be unreasonable:  Activision did not file a motion to dismiss in this case and did not file its initial motion for summary judgment asserting

invalidity under § 101 until September 2015, more than a year after the Supreme Court's decision in Alice, 573 U.S. at 212.  See D. 174; cf. Palomar Techs., Inc. v. MRSI Sys., LLC, No. 18-cv-10236-FDS, 2020 WL 4938414, at *8 (D. Mass. Aug. 12, 2020) (declining to find patent owner's § 101 position unreasonable as "the [§ 101] inquiry under Alice is fraught with difficult calls").

Activision also raises issues not adjudicated by this Court, namely that Worlds continued to pursue claims that were invalid in view of the prior art, D. 368-1 at 14, 17, and maintained baseless infringement claims, id. at 17–24.  While the Federal Circuit has held that a "district court's resting its exceptional-case determination on an examination of an issue . . . that was neither fully adjudicated nor even fully litigated before the judgment on the merits" was not an abuse of discretion, the court described this as "an unusual basis for fees."  Thermolife Int'l LLC v. GNC Corp., 922 F.3d 1347, 1356–57 (Fed. Cir. 2019) (noting that the court has "emphasized the wide latitude district courts have to *refuse* to add to the burdens of litigation by opening up issues that have not been litigated but are asserted as bases for a fee award" (emphasis in original)).  This Court, therefore, declines to consider issues neither adjudicated by nor fully litigated before it.[1]

---

[1] The Court notes Activision's reliance upon three of the PTAB decisions concluding that several of Worlds's claims were unpatentable.  See D. 368-1 at 14–17.  The Federal Circuit, however, vacated those decisions such that they have no legal effect.  Worlds Inc., 903 F.3d at 1248; see County of Los Angeles v. Davis, 440 U.S. 625, 634 n.6 (1979) (noting that the Court's decision "vacating the judgment" of a lower court "deprives that court's opinion of precedential effect" (quoting O'Connor v. Donaldson, 422 U.S. 563, 577–78 n.12 (1975)).  While this Court considered the PTAB decisions for their persuasive value upon Activision's renewed motion for summary judgment under § 101, see D. 358 at 7, those decisions did not bind this Court or bar Worlds from arguing its patents' validity before this Court.  See 35 U.S.C. § 282 (providing that "[a] patent shall be presumed valid" once issued).

2.      *Unreasonable Litigation Conduct*

As to the parties' litigation conduct, Activision claims that Worlds "stonewalled discovery," specifically by delaying its response to an interrogatory seeking that, "for each Asserted Claim of the Patents-in-Suit," Worlds "identify and describe in detail the bases for any contention by Worlds that such claim is valid in light of Activision's Invalidity Disclosure" ("Interrogatory No. 15").  D. 368-1 at 14–15; see D. 369-18 at 7.  Activision argues that it "had to expend resources on multiple occasions—over the course of months—to push Worlds to provide contentions as to how it would try to circumvent the prior art" and that "Worlds only provided fulsome validity contentions the day fact discovery closed."  D. 368-1 at 15 (emphasis omitted).

Worlds responds that Activision fails to provide the full context surrounding the parties' discovery conduct during this period.  See D. 375-1 at 15–17.  As Worlds notes, id. at 15, Activision served Interrogatory No. 15 on June 23, 2020.  D. 369-18 at 7.  Worlds timely responded on July 23, 2020.  D. 369-19 at 4–5; see Fed. R. Civ. P. 33(b)(2).  Activision requested supplementation, D. 369-20, and Worlds replied on September 3, 2020, suggesting that the parties engage in a telephonic meet and confer to "identify a common, mutually-agreeable date by which each party will supplement its production in response to the other party's aforementioned correspondence," D. 376-4.  Worlds supplemented its response to Interrogatory No. 15 on October 2, 2020.  D. 376-5 at 11–13.  For the next two months, the parties met and conferred regarding the scope of prior art references in Activision's invalidity contentions.  See D. 376-6; D. 376-7; D. 376-8 at 2 (noting that "the parties [were] close to agreement").  Following these negotiations, Activision renewed its request for Worlds to supplement its validity positions on December 4, 2020.  D. 376-9.  Worlds agreed to supplement its validity contentions, D. 376-12, and provided its second and third supplemental responses to Interrogatory No. 15 on January 21, 2021 and

February 18, 2021, respectively.  D. 376-13 at 10–58; D. 376-14 at 59–91.  Fact discovery closed on February 18, 2021.  D. 307.

Even assuming the above facts support that Worlds provided Activision with a deficient and delayed response to Interrogatory No. 15, Activision's own litigation conduct undermines its position.  See Romag Fasteners Inv., 866 F.3d at 1340 (noting that courts' consideration of the totality of the circumstances includes consideration of "the conduct of the prevailing party that is seeking attorney's fees").  Much of the delay here was the result of the stay from 2016 to 2020 during the pendency of the PTAB proceedings and review of same.  As discussed above, third party Bungie filed the IPR petitions that resulted in the PTAB's decisions later vacated by the Federal Circuit.  See Worlds Inc., 903 F.3d at 1239.  Following Activision's filing in this case a motion for protective order against requests for production related to the IPR proceedings, D. 292, Activision admitted for the purpose of this case, and for the first time, in March 2021 that it was a real party in interest ("RPI") to Bungie's IPR petitions.  D. 343 at 7.  As Worlds observes, D. 375-1 at 24, had Activision's RPI status been revealed to the PTAB in 2015, the IPR petitions would have been denied outright.  See Worlds Inc., 903 F.3d at 1240 (citing 35 U.S.C. § 315(b)).  By jointly requesting that this Court stay this case pending the IPR proceedings and subsequent appeal, both parties delayed this Court's disposition of the initial motion for summary judgment under 35 U.S.C. § 101, D. 174, which the parties had briefed and argued before the stay.  See D. 194; D. 201; see also Palomar Techs., 2020 WL 4938414, at * 9.

For all these reasons, Activision has not demonstrated by clear and convincing evidence that this was an "exceptional" case warranting an award of attorneys' fees under 35 U.S.C. § 285.  Accordingly, the Court DENIES Activision's motion for attorney's fees, D. 367.

### B.    Worlds's Motion to Disallow Activision's Amended Bill of Costs

#### 1.    Timing of Motion

Worlds argues that Activision's amended bill of costs was premature.  D. 382 at 4, 7.  By the "practice" of this Court, prevailing parties must file their bill of costs within fifteen days of "the earlier of (i) the expiration of the time allowed for appeal of the final judgment or decree, or (ii) receipt by the Clerk of the Mandate of the Court of Appeals."  See Taxation of Costs at 1.  Nothing, however, precluded Activision from filing its bill of costs before such time expired.  Regardless, Worlds's request for the Court to hold the bill of costs pending the disposition of Worlds's appeal is now moot, see D. 382 at 7, given the Federal Circuit's affirmance of this Court's judgment for Activision, see D. 385 (Worlds Inc. v. Activision Blizzard Inc., No. 2021-1990, 2022 WL 726969, at *1 (Fed. Cir. Mar. 10, 2022)).

#### 2.    Alleged Litigation Misconduct

Next, Worlds claims that Activision's "misconduct" precludes an award of costs.  D. 382 at 7–8; see Taxation of Costs at 3 (stating that "[c]osts may . . . be denied where the prevailing party has engaged in misconduct during the litigation process").  While this Court above notes Activision's concealment of its RPI status in the IPR proceedings as contributing to delay in this case—and, thus, a factor in denying Activision's motion for attorneys' fees—Worlds fails to show that such conduct amounts to "misconduct" sufficient to overcome the "background presumption favoring cost recovery for prevailing parties."  See San Juan Dupont Plaza Hotel, 994 F.2d at 962.

#### 3.    Compliance with 28 U.S.C. § 1924

Worlds also contends throughout its memorandum that Activision failed to comply with 28 U.S.C. § 1924, which requires that "the party claiming any item of cost . . . shall attach thereto an affidavit . . . that such item is correct and has been necessarily incurred in the case and that the

services for which fees have been charged were actually and necessarily performed." See D. 382 at 8–12.  Activision, however, complied with such requirement:  Activision's amended bill of costs includes a declaration by its attorney "declar[ing] under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed."  D. 379 at 1.

    *4. Individual Requests for Costs*

   Finally, Worlds argues that, even if this Court does not disallow Activision's amended bill of costs in its entirety, it should reject its individual requests for costs as non-recoverable.  D. 382 at 9–13.

   First, Worlds argues that Activision's request for costs of service of process should be disallowed because Activision failed to declare each line-item charge as correct and necessary and, moreover, that certain invoices indicate that the party in question was not served.  Id. at 9–10.  As noted above, however, Activision's amended bill of costs complies with 28 U.S.C. § 1924. Further, costs associated with service of subpoenas are recoverable under 28 U.S.C. § 1920(3), see Roggio v. Grasmuck, 18 F. Supp. 3d 49, 62 (D. Mass. 2014), and nothing in the statute or this Court's rules or practices suggests that costs for unsuccessful, but reasonable, attempts at service are unrecoverable.

   Second, Worlds argues that Activision's request for costs of deposition materials should be disallowed because the referenced deposition transcripts were not introduced in evidence, used at trial or filed in support of a successful motion for summary judgment.  D. 382 at 10–12.  As a general rule, costs for depositions introduced in evidence, used at trial or filed in support of a successful motion for summary judgment are considered "necessarily obtained for use in the case" under 28 U.S.C. § 1920(2) and, thus, may be taxed against the losing party.  See Bergeron v.

Cabral, 393 Fed. App'x 733, 735 (1st Cir. 2010); Templeman v. Chris Craft Corp., 770 F.2d 245, 249 (1st Cir. 1985).  District courts, however, have "discretion . . . to tax deposition costs if special circumstances warrant it, even though the depositions were not put in evidence or used at the trial."  Templeman, 770 F.2d at 249.  "[S]pecial circumstances" include if the "witnesses were either deposed at the request of [party opposing costs], or potential [opposing party] witnesses, or both."  Martinez v. Cui, No. 06-cv-40029-FDS, 2009 WL 3298080, at *2 (D. Mass. Apr. 13, 2009).  "Necessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling."  Id. (alteration omitted) (quoting Sales v. Marshall, 873 F.2d 115, 120 (6th Cir. 1989)).

Here, "special circumstances" justifying an award of costs exist for all eight depositions for which Activision seeks costs.  See Templeman, 770 F.2d at 249; Martinez, 2009 WL 3298080, at *2.  Six of the witnesses were deposed at Worlds's request, while one—Ron Britvich—was listed on Worlds's initial disclosures as an individual who "may possess information that Worlds may use to support its claims," D. 384-10 at 3.  See D. 380 at 4–5 ¶ 12; D. 383 at 11–12.  The eighth witness, Christopher Ryan, was Worlds's Rule 30(b)(6) designee on several "financial-related topics."  D. 383 at 12.  Activision asserts that it "relied on and cited to Mr. Ryan's deposition testimony in connection with responding to interrogatories propounded by Worlds and such testimony was necessarily obtained to rebut Worlds's damages theories."  Id. at 12–13.  Further, Activision notes that "both parties cited to and relied on Mr. Ryan's deposition testimony in connection with filings in this case."  Id. at 13 n.6.  The deposition of Christopher Ryan was, therefore, sufficiently necessary at the time of taking, see Martinez, 2009 WL 3298080, at *2, such that the Court will award, at least in part, costs associated with the depositions of all listed witnesses, including Christopher Ryan, see D. 380 at 4–5 ¶ 12.

Worlds, however, also argues that costs associated with rough transcripts and ancillary services such as exhibits should be disallowed. D. 382 at 12. While Activision correctly notes that nothing prohibits the recovery of costs for exhibits attached to deposition transcripts, D. 383 at 13, "[c]osts associated with the rough transcript . . . are not recoverable," Brigham & Women's Hosp., Inc. v. Perrigo Co., 395 F. Supp. 3d 168, 172 n.1 (D. Mass. 2019); see Modeski v. Summit Retail Sols., Inc., No. 18-cv-12383-FDS, 2020 WL 5026726, at *2 (D. Mass. Aug. 25, 2020); Haemonetics Corp. v. Fenwal, Inc., 863 F. Supp. 2d 110, 117 (D. Mass. 2012). Accordingly, the Court will disallow costs associated with the rough transcripts for all listed depositions. See D. 380 at 4–5 ¶ 12; D. 380-2 at 2–9 (listing cost of rough transcripts for depositions of John Bojorquez, Ron Britvich, George Cash, Michael Elliot, Patrick Griffith, Neal Hubbard, Rob Kostich and Christopher Ryan as $331.50, $427.50, $332.50, $345.00, $295.50, $228.75, $370.50 and $405.00, respectively, totaling $2,736.25).

Third, Worlds argues that Activision's request for costs of hearing transcripts should be disallowed. D. 382 at 10–12. The Court, however, agrees with Activision that the listed hearing transcripts were relevant to and necessary for Worlds's appeal, see D. 380 at 5–6 ¶ 14 (listing transcripts for Markman hearing, motion hearings and April 2020 status conference), justifying an award of costs for such transcripts. See ASIS Internet Servs. v. Optin Global, Inc., No. 05-cv-5124 JCS, 2008 WL 5245931, at *3 (N.D. Cal. Dec. 17, 2008) (finding prevailing party was "entitled to the costs of hearing transcripts because they are relevant to and necessary for the appeal" "[r]egardless of whether the request for the transcript occurred before or after summary judgment").

Fourth and finally, Worlds argues that that Activision's request for witness costs should be disallowed because, while witnesses may receive a stipend for each day they attend trial, no

witness here attended trial.  D. 382 at 13 (citing <u>Haemonetics</u>, 863 F. Supp. 2d at 117).  Courts, however, also allow taxation of witness costs for depositions "necessarily obtained for use in the case" even when not related to attendance at trial.  <u>See</u> <u>Animal Hosp. of Nashua, Inc. v. Antech Diagnostics</u>, No. 11-cv-448-LM, 2015 WL 13844702, at *3 (D.N.H. Jan. 5, 2015).  Here, all six witnesses for which Activision seeks witness fees were deposed at Worlds's request, <u>see</u> D. 380 at 6 ¶ 17, making an award of costs for such fees appropriate.

For all these reasons, the Court will award costs to Activision in the amount of $17,780.47—that is, the requested $20,516.72, less $2,736.25 for the cost of rough transcripts of the eight listed depositions.  <u>See</u> D. 379; D. 380 at 2 ¶ 6, 4–5 ¶ 12; D. 380-2 at 2–9.

## V.    Conclusion

For the foregoing reasons, the Court DENIES Activision's motion for attorneys' fees, D. 367, and DENIES in part and ALLOWS in part Worlds's motion for disallowance, D. 381.  The Court will award costs in the amount of $17,780.47 to Activision.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge